**Marion KANEMOTO, Richard Tsutakawa, Robert Tsutakawa, Mildred Fukumoto, Evelyn Akiyama, Irene Nakamoto, Tokiko Shimada, June Oto, Shizuko Shiozuki, Yuko Sugiyama, Mimi Iwatsu, Akiko Miyoski, Louise Tung, Jeane Yonemura, Plaintiffs–Appellees,**

v.

**Janet RENO, Attorney General, U.S. Department of Justice, Paul W. Suddes, Acting Administrator, Office of Redress Administration of the Civil Rights Division of the Department of Justice, and Office of Redress Administration, Defendants–Appellants.**

No. 93–1334.

United States Court of Appeals, Federal Circuit.

Dec. 5, 1994.

Owen James Clements, Morrison & Foerster, San Francisco, CA, argued for plaintiffs-appellees. With him on the brief were James F. McCabe and G. Jiyun Lee. Also on the brief was Gen Fujioka, Asian Law Caucus, Inc., of San Francisco, CA.

Mark W. Pennak, Atty., Dept. of Justice, of Washington, DC, argued for defendants-appellants. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen. and Barbara C. Biddle, Atty. Also on the brief was Frank W. Hunger, Asst. Atty. Gen.

Before ARCHER, Chief Judge,* MICHEL and SCHALL, Circuit Judges.

ARCHER, Chief Judge.

The United States appeals the order of the United States District Court for the Northern District of California denying the government's motion to transfer the case to the United States Court of Federal Claims under 28 U.S.C. § 1631. We reverse the order and remand with instructions to transfer the case.

## I.

Plaintiffs, Marion Kanemoto, et al., are fourteen United States citizens of Japanese ancestry who were interned with their families during World War II pursuant to Executive Order 9066. Kanemoto[1] was a minor child during her internment. During the war, she was sent to Japan, along with her family, as part of a government sponsored "prisoner-exchange." Kanemoto returned to the United States after the end of the war.

In 1988, Congress passed the Civil Liberties Act of 1988, Pub.L. No. 100–383, 102 Stat. 903 (codified at 50 U.S.C.App. §§ 1989–1989d) (the Act), in recognition of the funda-

---

* Chief Judge Archer assumed the position of Chief Judge on March 18, 1994.

1. For convenience, we refer in this opinion only to Ms. Kanemoto, the first named plaintiff in the complaint. The relevant facts and circumstances regarding her case in the district court are similar to those of the other plaintiffs. Accordingly, our references to Ms. Kanemoto apply equally to all the other named plaintiffs in this case.

mental injustices committed against American citizens and resident aliens of Japanese descent during World War II. The Act provides an official apology for the internment, 50 U.S.C.App. § 1989a(a), and provides for "restitution to those individuals of Japanese ancestry who were interned," 50 U.S.C.App. § 1989(4). To grant restitution, the Act establishes a trust fund, 50 U.S.C.App. § 1989b-3, and provides that the Attorney General shall pay out of the fund the sum of $20,000 "to each eligible individual." 50 U.S.C.App. § 1989b-4(a)(1).

An "eligible individual," as defined by the Act, "does not include any individual who, during the period beginning on December 7, 1941, and ending on September 2, 1945, relocated to a country while the United States was at war with that country." 50 U.S.C.App. § 1989b-7(2). The agency responsible for implementing the Act, the Office of Redress Administration ("ORA") within the Department of Justice, promulgated regulations relating to eligibility for restitution. *See* 28 C.F.R. § 74.4. On the basis of the Act and these regulations, ORA denied Kanemoto's claim for restitution, finding that she was ineligible because she had relocated to Japan during the war.

Kanemoto filed suit in the district court challenging the agency's determination and seeking the statutory amount of restitution. The complaint alleged four "causes of action" (procedural bases) in support of the claim for restitution: (1) the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706; (2) the Mandamus and Venue Act, 28 U.S.C. § 1361; (3) the Declaratory Judgment Act, 28 U.S.C. § 2201, and; (4) the Equal Protection and Due Process clauses of the United States Constitution. All four causes of action alleged that ORA wrongfully denied payment of the restitution amount and sought as relief an order (i) "enjoining the defendants from interpreting [the Act] as excluding from eligibility for restitution those persons who, as minors, relocated with their parents to a country then at war with the United States," (ii) "compelling the Attorney General and his designates to pay plaintiffs the redress payments due them under [the Act]," and (iii) "declaring that the term 'relocate' as used in

[the Act], refers only to voluntary relocations." Attorney fees and costs were also sought. Jurisdiction in the district court was stated to be based on federal question jurisdiction, 28 U.S.C. § 1331, and Mandamus and Venue Act jurisdiction, 28 U.S.C. § 1361.

The government moved to dismiss the complaint or, in the alternative, transfer the case to the Court of Federal Claims. The government contended that because Kanemoto sought monetary damages from the United States in excess of $10,000, the Tucker Act, 28 U.S.C. § 1491, precluded jurisdiction in the district court. The district court disagreed with the government's characterization of the relief sought. In the district court's view, Kanemoto did not seek "monetary damages," but rather "reparation payments" incidental to her claim for equitable relief. Such reparation payments, reasoned the court, are available as relief in a suit against the government under the APA's waiver of sovereign immunity for nonmonetary damage claims. Thus, the district court denied the government's motion, ruling it had federal question jurisdiction and that the necessary waiver of sovereign immunity was available under the APA.

The government appeals the district court's order denying its motion to transfer to the Court of Federal Claims. Under 28 U.S.C. § 1292(d)(4)(A), this court has exclusive jurisdiction to hear an appeal from such an order.

## II.

■ The question before us is not whether Kanemoto has a meritorious claim but whether Kanemoto's claim was brought in the appropriate forum. The district court's order denying the government's motion is based on its conclusion that it had subject matter jurisdiction to decide the case. We review decisions of the district courts on questions of jurisdiction under a *de novo* standard of review. *Benderson Development Co. v. United States Postal Service,* 998 F.2d 959, 962 (Fed. Cir.1993).

Congress has provided the district courts with broad authority to hear "all civil actions arising under the Constitution, laws, or trea-

ties of the United States," 28 U.S.C. § 1331. On its face, Kanemoto's complaint falls within this general federal question jurisdiction. Because Kanemoto's suit is against the United States, however, she faces an additional obstacle, sovereign immunity, which must be overcome before her claim for restitution will lie.

■ The United States, as sovereign, cannot be sued without an express waiver of its sovereign immunity. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). "[T]he terms of [the sovereign's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.* at 586–87, 61 S.Ct. at 769–70. Federal question jurisdiction under 28 U.S.C. § 1331 does not by itself operate as a waiver of sovereign immunity. *Kester v. Campbell*, 652 F.2d 13, 15 (9th Cir.1981). Thus Kanemoto must identify an independent basis for the waiver of sovereign immunity in order to maintain her claim in the district court. The district court found that waiver in section 702 of the APA. 5 U.S.C. § 702.

The APA provides a waiver of sovereign immunity in the district courts for claims against the government for unlawful agency actions other than money damage claims. Section 702 provides, in pertinent part, that:

A person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States....

5 U.S.C. § 702. The Supreme Court's recent decision in *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), established that not all monetary relief is "money damages" within the meaning of section 702. Thus if the restitution at issue in Kanemoto's appeal could be construed as monetary relief other than money damages,

section 702 would, as the district court found, supply the necessary waiver of sovereign immunity to support Kanemoto's claim in the district court. Before we can reach that question, however, a threshold question on the applicability of section 702 must first be answered.

■ Section 704 of the APA provides that "[a]gency action made reviewable by statute and final agency action *for which there is no other adequate remedy* in a court are subject to judicial review." 5 U.S.C. § 704 (emphasis added). The converse is that where agency action is otherwise reviewable in court and an adequate remedy is available in connection with that review, the APA's waiver of sovereign immunity under section 702 is not available. *Mitchell v. United States*, 930 F.2d 893, 895–96 (Fed.Cir.1991). The government contends that Kanemoto has an alternative avenue of review that offers an entirely "adequate remedy"—a suit under the Tucker Act in the Court of Federal Claims.

The Tucker Act is a general waiver of sovereign immunity for monetary claims against the United States. It provides:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491. Jurisdiction under the Tucker Act is exclusive in the Court of Federal Claims for claims above $10,000.

■ The Court of Federal Claims is an Article I trial court of limited jurisdiction that was created by Congress as a forum where private parties could sue the government for money claims, other than those sounding in tort, where the claims would otherwise be barred by sovereign immunity. *See Beck v. Secretary of Health and Human Servs.*, 924 F.2d 1029, 1036 (Fed.Cir.1991). The remedies available in that court extend only to those affording monetary relief; the

court cannot entertain claims for injunctive relief or specific performance, except in narrowly defined, statutorily provided circumstances not here pertinent. *See, e.g.,* 28 U.S.C. § 1491(a)(3) (granting the Court of Federal Claims injunctive power in pre-award bid protest cases). In view of these limitations, the Tucker Act has been judicially interpreted as vesting jurisdiction in the Court of Federal Claims (and its predecessor courts, the United States Court of Claims and the United States Claims Court) only for cases involving claims for monetary relief. *See United States v. Jones,* 131 U.S. 1, 18, 9 S.Ct. 669, 671, 33 L.Ed. 90 (1889). Thus, because the range of relief available in the Court of Federal Claims is limited, the waiver of sovereign immunity provided under the Tucker Act will not always provide an adequate remedy in a suit against the United States.

This was a central teaching of *Bowen v. Massachusetts.* The Supreme Court there interpreted sections 702 and 704 of the APA in conjunction with the Tucker Act. In *Bowen,* the Commonwealth of Massachusetts brought suit to reverse a federal agency's refusal to reimburse the state for certain categories of Medicaid expenditures. 487 U.S. at 886–87, 108 S.Ct. at 2727–29. Under the Medicaid program, the federal government makes quarterly advance payments to the state in anticipation of the future reimbursable costs of the state's program. *Id.* at 883–85, 108 S.Ct. at 2726. When the Secretary of Health and Human Services notified Massachusetts that certain of its claimed expenditures had been disallowed, Massachusetts brought suit in the district court requesting declaratory and injunctive relief setting aside the Secretary's decision. *Id.* at 886–87, 108 S.Ct. at 2727–29. The government challenged the district court's jurisdiction to hear the case, contending that the Tucker Act provided exclusive jurisdiction for the suit in the then Claims Court. *Id.* at 890, 108 S.Ct. at 2730.

In its opinion, the Supreme Court first analyzed whether the claim was really one for "money damages" outside the scope of section 702 of the APA. Not all monetary relief can be characterized as money dam-

ages, reasoned the Court, as the term "money damages" is normally associated with compensation for damage sustained. *Id.* at 893, 108 S.Ct. at 2731–32. On the facts of *Bowen,* the Court concluded that the state did not seek compensation for damage but rather it sought "to enforce the statutory mandate itself, which happens to be one for the payment of money." *Id.* at 900, 108 S.Ct. at 2735. Thus the state's claim was held to fall within section 702's waiver of sovereign immunity for claims other than money damages.

The Court then analyzed whether a suit in the Claims Court under the Tucker Act would have provided the state with an adequate alternative remedy. The Court found that it would not because the Claims Court has no power to grant equitable relief. *Id.* at 905, 108 S.Ct. at 2738. The state sought declaratory or injunctive relief that would require the Secretary to modify *future* Medicaid practices. *Id.* The Medicaid Act created an ongoing program where the state administers benefits to the public and claims reimbursable expenditures from the federal government. *Id.* at 907, 108 S.Ct. at 2738–39. Given that the program envisions future cooperation between the parties for an indefinite period of time, the Court was "not willing to assume, categorically, that a naked money judgment against the United States will always be an adequate substitute for *prospective relief fashioned in the light of the rather complex ongoing relationship between the parties.*" *Id.* at 905, 108 S.Ct. at 2738 (emphasis added). The Court concluded that a suit in the Claims Court would not provide an adequate remedy and therefore the district court had jurisdiction to hear the case as to the injunctive and declaratory relief and to provide for the payment of appropriate monetary relief.

■ ·The dispositive distinction between the instant case and *Bowen* is that a "naked money judgment" would provide Kanemoto an adequate remedy. The Court of Federal Claims under its Tucker Act jurisdiction can interpret the statute and render a judgment against the United States that will provide Kanemoto with the entire relief she sought in the first place from the ORA—the $20,000

statutory amount of restitution. Further, such a judgment will provide essentially all the relief sought in the district court. While Kanemoto framed her complaint to seek a declaration of the meaning of the statutory provision and an injunction to compel the Attorney General to so interpret the statute, the ultimate relief Kanemoto seeks in all counts of the complaint is the payment to her of the $20,000 statutory amount of restitution. Moreover, the decision by the Court of Federal Claims would "declare" the proper interpretation of the statute. While the interpretation in the opinion would not technically preclude the ORA from taking a conflicting position in a different case, as a practical matter the opinion would stand as persuasive precedent in future cases; and if the interpretation were affirmed precedentially by this court it would be binding in future Court of Federal Claims actions. Finally, the Court of Federal Claims' judgment would "compel" the Attorney General to make the redress payments sought by Kanemoto.

■ Therefore, the relief available for Kanemoto's claims in the Court of Federal Claims is "adequate"; it can provide, in substance, all of Kanemoto's requested relief. Kanemoto cannot escape this conclusion merely by framing her claim for relief in declaratory or injunctive terms, as she appears to have done. "A party may not avoid the [Court of Federal Claims'] jurisdiction by framing an action against the federal government that appears to seek only equitable relief when the party's real effort is to obtain damages in excess of $10,000." *Marshall Leasing, Inc. v. United States,* 893 F.2d 1096, 1099 (9th Cir.1990). *See also Eagle–Picher Indus. Inc. v. United States,* 901 F.2d 1530, 1532 (10th Cir.1990). All of Kanemoto's claims are predicated on the government's denial of the statutory amount of restitution and at bottom seek only payment of the $20,000. Jurisdiction for such claims properly lies in the Court of Federal Claims. *See Mitchell,* 930 F.2d at 897 ("Regardless of whether Mitchell's case is a disguised claim for money, 5 U.S.C. § 704 deprives the district court of jurisdiction."). Accordingly, we conclude that the Tucker Act provides Kanemoto with an "adequate remedy" within the meaning of section 704 of the APA. There-

fore, jurisdiction for this action is not available under the APA and we need not reach the question of whether the relief sought by Kanemoto is "relief other than money damages" under section 702 of the APA.

## III.

■ The district court used an improper analysis in deciding that it had jurisdiction under the APA to hear this action. The district court erroneously concluded that jurisdiction would not lie in the Court of Federal Claims because Kanemoto's claim was not one for money damages. To arrive at this conclusion, the district court imported the "money damages" limitation in section 702 of the APA into the Tucker Act. Relying on *Sisseton–Wahpeton Sioux Tribe v. United States,* 895 F.2d 588, 596 (9th Cir.1990), the district court reasoned that because, in its opinion, the redress payments were not money damages, jurisdiction was not available under the Tucker Act. That reasoning is wrong, however, as expressly recognized by the Supreme Court in *Bowen.*

"There are, of course, many statutory actions over which the [Court of Federal Claims] has jurisdiction that enforce a statutory mandate for the payment of money rather than obtain compensation for the Government's failure to so pay.... The jurisdiction of the [Court of Federal Claims], however, is not expressly limited to actions for 'money damages,' ... whereas that term does define the limits of the exception to § 702." *Bowen,* 487 U.S. at 900 n. 31, 108 S.Ct. at 2735 n. 31 (internal references omitted). Thus the Court recognized that the Tucker Act is not limited to suits for money damages. Indeed, *Bowen* reaffirmed the Court of Federal Claims' jurisdiction over causes of action for payment of money other than damages, including statutory causes of action, such as the Back Pay Act, 5 U.S.C. § 5596(b).

In our view, the statute at issue in this case, 50 U.S.C.App. § 1989b–4(a)(1), as properly interpreted in light of 50 U.S.C.App. § 1989b–7(2), is a mandate for the payment of money over which the Court of Federal Claims has jurisdiction. The statute requires a one time payment of money by the

Attorney General ("shall pay") to "eligible" individuals in recognition of the injustices their country inflicted upon them during World War II. The statute does not contemplate a "complex scheme" or an "intricate, ongoing relationship[ ]." *See Bowen,* 487 U.S. at 900 n. 31, 108 S.Ct. at 2735 n. 31. As a result there is simply no need to resort to declaratory or injunctive powers to afford Kanemoto complete relief.[2] Therefore, the district court erred in concluding that the Court of Federal Claims would not have Tucker Act jurisdiction over this action for "reparation" payments.

Kanemoto further argues that the Court of Federal Claims may not have jurisdiction because the claim is not one for "presently due money damages." There is no requirement in the Tucker Act that there must be a finding that money is due before the Court of Federal Claims can exercise its jurisdiction. The Court of Federal Claims has the power to make a determination of liability that will give rise to a remedy of monetary relief by finding, for example, that a breach of contract has occurred, *Hughes Communications Galaxy, Inc. v. United States,* 998 F.2d 953 (Fed.Cir.1993), that a taking without compensation has occurred, *Shelden v. United States,* 7 F.3d 1022 (Fed. Cir.1993), or that an agency has misinterpreted its statutory mandate to pay out monies, *Mitchell,* 930 F.2d at 895–97.

Kanemoto's additional arguments in favor of jurisdiction for this suit in the district court and against jurisdiction in the Court of Federal Claims have been considered but we do not find them persuasive.

### IV.

For the above reasons, the order of the district court denying the government's motion to transfer is reversed and the case is remanded with instructions that it be transferred to the United States Court of Federal Claims.

*REVERSED and REMANDED.*

---

2. The Supreme Court recognized that there were times when a suit in the Court of Federal Claims under the Tucker Act for enforcement of a money mandating statute would be entirely adequate and that there were times when it would be inadequate. "[L]itigation in the Claims Court can offer precisely the kind of 'special and adequate review procedures' that are needed to remedy particular categories of past injuries or labors for which various federal statutes provide compensation.... Managing the relationships between the States and the Federal Government that occur over time and that involve constantly shifting balance sheets requires a different sort of review and relief process. The APA is tailored to fit the latter situation; the Tucker Act, the former." *Bowen,* 487 U.S. at 904 n. 39, 108 S.Ct. at 2737 n. 39 (internal reference omitted).