BRYSON, Circuit Judge.
This appeal requires us to engage in the wasteful exercise of deciding not how a dispute should be resolved, but what court should be responsible for resolving it. As Justice Scalia has pointed out in a similar setting, “[njothing is more wasteful than litigation about where to litigate, especially when all the options are courts within the same legal system that will apply the same law.” Bowen v. Massachusetts, 487 U.S. 879, 930, 108 S.Ct. 2722, 2750, 101 L.Ed.2d 749 (1988) (Scalia, J., dissenting).
It is often difficult to determine whether an action is properly before the district court or should have been brought in the Court of Federal Claims. That task is made harder in this case by the inartful drafting of the amended complaint. At the end of the day, however, we are persuaded that this case was properly brought in the United States district court and should not have been transferred to the Court of Federal Claims. We therefore reverse the transfer order of the district court.
I
The National Center for Manufacturing Sciences (“NCMS”) is a not-for-profit research and development consortium comprising more than 200 member companies. Its principal objective is to identify and solve common manufacturing problems, and to perform research and development activities that private firms might not undertake. A portion of NCMS’s funding is derived from congressional appropriations. In November of 1993, Congress passed the Department of *198 Defense Appropriations Act for Fiscal Year 1994 (“the Appropriations Act”), which provided, in pertinent part:
RESEARCH, DEVELOPMENT, TEST AND EVALUATION, AIR FORCE
For expenses necessary for basic and applied scientific research, development, test and evaluation, including maintenance, rehabilitation, lease, and operation of facilities and equipment, as authorized by law, $12,314,362,000, to remain available for obligation until September 30, 1995: ... Provided further, That not less than $40,-000,000 of the funds appropriated in this paragraph shall be made available only for the National Center for Manufacturing Sciences (NCMS).
Pub.L. No. 103-139, 107 Stat. 1418, 1433 (1993).
In September 1994, the Air Force and NCMS executed a “Cooperative Agreement,” which laid out the terms under which NCMS was to proceed with respect to the appropriated funds. The Agreement noted that the government’s “share for full performance” of the award was estimated at a maximum of $40,000,000, but that only $24,125,000 was “currently available and allotted at the time of the award.” The Air Force has not distributed the remaining $15,875,000 of the $40,000,000 referred to in the Appropriations Act and in the Cooperative Agreement.
NCMS filed suit in the United States District Court for the District of Columbia seeking an order directing the Air Force to release the remaining funds appropriated for fiscal year 1994. NCMS’s four-count amended complaint sought relief by way of mandamus, 28 U.S.C. § 1361; under the Declaratory Judgment Act, 28 U.S.C. § 2201; under the judicial review provisions of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706; and through specific performance of the Cooperative Agreement. The Air Force moved to dismiss the complaint or, in the alternative, to transfer the case to the United States Court of Federal Claims.
The district court found that NCMS’s claim was “a contract claim against the government in excess of $10,000, for which there is no District Court jurisdiction.” Pursuant to 28 U.S.C. § 1631, the district court therefore ordered the case transferred to the Court of Federal Claims. NCMS appeals the district court’s transfer order. This court has exclusive jurisdiction to hear the appeal under 28 U.S.C. § 1292(d)(4)(A).
II
The federal transfer statute, 28 U.S.C. § 1631, provides that a court may transfer an action to another court if the transferor court lacks jurisdiction to hear the action and the transferee court would have jurisdiction. As is frequently true in cases such as this one, the propriety of the transfer turns on whether this ease properly belongs before the district court under the APA, or before the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491.
A
The district court ruled that this case should be transferred to the Court of Federal Claims because the court viewed it as “a contract claim against the government.” NCMS argues that the claims in this case are premised on rights stemming from the Appropriations Act, not on rights stemming from a contract between NCMS and the government. The first three counts of the amended complaint are plainly based on the Appropriations Act and therefore do not state a contract-based claim. The fourth count requests specific performance of the Cooperative Agreement between NCMS and the Air Force, a remedy the Court of Federal Claims is not empowered to grant. See Kanemoto v. Reno, 41 F.3d 641, 644-45 (Fed.Cir.1994); see generally United States v. Jones, 131 U.S. 1, 17-19, 9 S.Ct. 669, 671-72, 33 L.Ed. 90 (1889). While a request for specific performance of a contract might in some cases be construed as an action for the payment of money, that is not the ease here. NCMS argued in the district court and reiterated in oral argument before us that it is not seeking an unconditional payment of $15,875,000, but recognizes that any additional funds released under the Appropriations Act would be subject to restrictions and constraints reflected either in a supplement to the Cooperative Agreement or in a new *199 agreement between NCMS and the Air Force. An order directing the Air Force to supplement the Cooperative Agreement or engage in a new agreement with NCMS would be equitable in nature and thus would not be within the jurisdiction of the Court of Federal Claims. Accordingly, we conclude that the transfer order cannot be sustained on the ground that the amended complaint states a “contract claim against the government” for which the Court of Federal Claims could grant relief.
B
In the district court, the government argued in favor of transfer on the theory that NCMS’s case was in essence a breach of contract claim. In this court, however, the government defends the transfer order on a different ground — that the complaint seeks monetary relief under a money-mandating statute. The government is careful to note, however, that while it reads the complaint as alleging that the Appropriations Act is a money-mandating statute, it does not believe that the Act is such a statute. Nonetheless, because the government reads the complaint as alleging claims based on a money-mandating statute, it argues that the proper disposition of this case is to affirm the transfer order and let the case proceed in the Court of Federal Claims.
At oral argument, counsel for the government made clear that if this court affirms the transfer to the Court of Federal Claims, the government will seek dismissal of the complaint on the ground that the Appropriations Act is not a money-mandating statute. If the Court of Federal Claims were to dismiss the-complaint on that ground, NCMS would have to return to the district court and start all over (the statute of limitations permitting) by filing a new complaint, this time avoiding any suggestion in its complaint that the Appropriations Act is a money-mandating statute.
This proposed scenario threatens to turn this case into a jurisprudential Flying Dutchman, casting about in search of a court that can reach the merits of NCMS’s claims. It would be pointless, or worse, to engage in such an exercise if it is reasonably clear at this point where this case should ultimately come to rest. Notwithstanding the imprecision of the complaint, we therefore “look to the true nature of the action in determining the existence or not of jurisdiction.” Katz v. Cisneros, 16 F.3d 1204, 1207 (Fed.Cir.1994). Upon so doing, we are convinced that the ease should be before the district court and not the Court of Federal Claims.
C
The parties to this case focus on two potential impediments to district court review that the APA erects in cases in which monetary relief is sought against the United States. First, the APA waives the sovereign immunity of the United States only for “[a]n action in a court of the United States seeking relief other than money damages.” 5 U.S.C. § 702. In an action for “money damages,” a plaintiff must seek a waiver of sovereign immunity elsewhere, such as in the Tucker Act. Second, the APA provides that nonstatutory APA review of agency action is available only “if there is no other adequate remedy in a court.” 5 U.S.C. § 704. Thus, if a Tucker Act suit in the Court of Federal Claims provides an adequate remedy, APA review in the district court is not available.
1
The Supreme Court addressed the scope of the APA’s waiver of sovereign immunity in Bowen v. Massachusetts, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). Based on the Court’s analysis of section 10(a) of the APA (5 U.S.C. § 702), we conclude that the waiver of sovereign immunity in the APA applies to the claims in this ease.
In Bowen, the Commonwealth of Massachusetts brought suit in district court to challenge a decision of the Secretary of Health and Human Services refusing to reimburse the State for funds it expended under the Medicaid program. The Court agreed with the State’s assertion that the United States had waived its sovereign immunity under the APA. In particular, the Court held that the relief sought by the State (the release of Medicaid funds) was not “money damages,” and that the requested relief was therefore not within the exception to the APA’s waiver *200 of sovereign immunity for suits seeking “money damages.” See 487 U.S. at 893, 108 S.Ct. at 2731-32.
The Court reasoned that “[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as ‘money damages.’ ” Id. Distinguishing between damages (relief barred under the APA) and specific remedies (relief permitted under the APA), the Court explained that “[djamages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.” Id. at 895, 108 S.Ct. at 2732, quoting Maryland Dep’t of Human Resources v. Department of Health and Human Servs., 763 F.2d 1441, 1446 (D.C.Cir.1985).
The Court noted that the legislative history of the 1976 amendment to the APA (which added the portion of 5 U.S.C. § 702 dealing with the waiver of sovereign immunity) made it clear that Congress intended to authorize APA review of the administration of federal grant-in-aid programs, and that Congress therefore did not “regard judicial review of an agency’s disallowance decision [denying payment under a grant-in-aid program] as an action for damages.” 487 U.S. at 898, 108 S.Ct. at 2734. Accordingly, the Court held that an action to enforce the requirement that the government pay certain amounts for appropriate Medicaid services “is not a suit seeking money in compensation for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it is a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money.” Id. at 900, 108 S.Ct. at 2735. The Court further explained the distinction as follows: “[The State] is seeking funds to which a statute allegedly entitles it, rather than money in compensation for the losses, whatever they may be, that [the State] will suffer or has suffered by virtue of the withholding of those funds.” Id. at 901, 108 S.Ct. at 2735-36, quoting Maryland Dep’t of Human Resources, 763 F.2d at 1446.
This court reached the same conclusion on similar analysis in Katz v. Cisneros, 16 F.3d 1204, 1207-09 (Fed.Cir.1994), in which a housing developer sought payments from the Department of Housing and Urban Development under the Housing Act of 1937. Finding Bowen applicable, the court held that the developer’s suit could be brought in district court because the plaintiff was seeking “payments to which it alleges it is entitled pursuant to federal statute and regulations; it [did] not seek money as compensation for a loss suffered.” Id. at 1208; see also Alaska Airlines, Inc. v. Johnson, 8 F.3d 791, 797 (Fed.Cir.1993).
The distinction drawn by the Supreme Court in Bowen v. Massachusetts and by this court in Katz v. Cisneros between “money damages” (as that term is used in 5 U.S.C. § 702) and other forms of monetary relief makes it clear that NCMS’s demand for the release of the remaining funds referred to in the Appropriations Act is not a demand for “money damages” within the meaning of the exception to the APA’s waiver of sovereign immunity. Like the grant-in-aid applicants referred to in Bowen v. Massachusetts, NCMS is seeking funds to which it claims it is entitled under a statute; it is not seeking money in compensation for losses that it has suffered or will suffer as a result of the withholding of those funds. Thus, the message of Bowen v. Massachusetts and Katz v. Cisneros, as applied to this case, is that sovereign immunity does not bar the district court from conducting APA review of the Air Force’s refusal to release funds appropriated under the Appropriations Act.
2
The second potential impediment to the district court’s exercise of jurisdiction addressed by the parties is the portion of 5 U.S.C. § 704 that permits a district court to undertake nonstatutory judicial review of agency action only if the claim is one “for which there is no other adequate remedy in a court.” On that issue as well, the Supreme Court’s decision in Bowen v. Massachusetts is instructive, and once again the Supreme Court’s analysis compels the conclusion that the district court is authorized to conduct APA review in this case.
In discussing whether the remedies available in the Court of Federal Claims would be *201 adequate, the Supreme Court in Bowen v. Massachusetts explained that the availability of a Tucker Act suit in the Court of Federal Claims would not be sufficient in the circumstances of that case to “oust a district court of its normal jurisdiction under the APA.” 487 U.S. at 904, 108 S.Ct. at 2737. Noting that prospective relief was not available in the Court of Federal Claims, the Court stated that it was “not willing to assume, categorically, that a naked money judgment against the United States will always be an adequate substitute for prospective relief fashioned in the light of the rather complex ongoing relationship between the parties.” Id. at 905, 108 S.Ct. at 2738. The Court explained that the State’s interest in future planning could make it important to seek prompt relief, “perhaps in the form of a motion for a preliminary injunction” in response to the agency’s funding decisions. Id. at 907,108 S.Ct. at 2738-39.
While observing that a Tucker Act suit would not provide an adequate remedy in the context of that case, the Bowen Court described the kinds of statutory claims for which a Tucker Act remedy is available and would provide adequate relief. The statutes that could adequately be enforced by suit under the Tucker Act, the Court explained, are statutes “that provide compensation for specific instances of past injuries or labors; suits brought under these statutes do not require the type of injunctive and declaratory powers that the district courts can bring to bear in suits under the Medicaid Act.” 487 U.S. at 901 n. 31,108 S.Ct. at 2735 n. 31. The statutory mandate of a federal grant-in-aid program, the Court added, differs from the mandate of a statute designed to afford “compensation for a past wrong,” in that the former “directs the [government] to pay money to the [recipient] not as compensation for a past wrong, but to subsidize future ... expenditures.” Id. at 907 n. 42, 108 S.Ct. at 2739 n. 42.
Some portions of NCMS’s complaint suggest that NCMS seeks a “naked money judgment” for $15,875,000 against the government. Other portions of the complaint, however, make clear that NCMS anticipates the need for injunctive relief, such as an order enjoining the defendants from obligating and disbursing particular funds that should be reserved for NCMS, and “[extending the time of obligation” in the Appropriations Act to preserve the status quo. Looking behind the complaint, moreover, we conclude that it is doubtful that a simple money judgment in NCMS’s favor would be appropriate, even if NCMS is correct in its claim that it is entitled to have the remaining $15,875,000 referred to in the Appropriations Act allotted to its account.
The Appropriations Act directs that the appropriated funds be used “[f]or expenses necessary for basic and applied scientific research, development, test and evaluation, including maintenance, rehabilitation, lease, and operation of facilities and equipment, as authorized by law.” Pub.L. No. 103-139,107 Stat. 1418, 1433 (1993). Thus, as NCMS acknowledged at oral argument, it would not be entitled to a monetary judgment that would allow it to use the funds appropriated under the Act for any purpose, without restriction. Instead, the Act requires that NCMS use any money disbursed from the appropriated funds to perform the basic and applied research functions called for in the Act. The Act thus contemplates a cooperative, ongoing relationship between NCMS and the Air Force in the allocation and use of the funds.
The Cooperative Agreement reflects this ongoing relationship. The Agreement defines a “Research and Strategy Agenda” in which the government is to be “an active participant” and provides that the funds “must be allocated by [NCMS] exclusively for the execution and operation of collaborative projects contained in [NCMS’s] research Agenda.” In light of the restrictions governing the manner in which money may be allocated to NCMS and spent, it thus seems reasonably clear that a simple money judgment issued by the Court of Federal Claims would not be an appropriate remedy, even if NCMS is entitled to obtain access to the remaining $15,875,000 on some terms.
With respect to the adequacy of the remedies available in a Tucker Act suit, this case is therefore akin to Bowen v. Massachusetts and quite unlike Kanemoto v. Reno, 41 F.3d *202 641 (Fed.Cir.1994), on which the government relies. In Kanemoto, a United States citizen of Japanese descent sought payment under a statute that provided monetary restitution to certain citizens and resident aliens who were interned in this country during the Second World War. The plaintiff filed her complaint in the district court, which denied the government’s motion to transfer the case to the Court of Federal Claims. We reversed, holding that the ease should have been transferred to the Court of Federal Claims and could not properly be maintained in the district court. In that case, we explained, a “ ‘naked money judgment’ would provide Kanemoto an adequate remedy.” 41 F.3d at 645. Kanemoto involved a statute that provided “compensation for specific instances of past injuries or labors,” the kind of statute that the Supreme Court in Bowen identified as falling squarely within the competence of the Court of Federal Claims. Because Ms. Kanemoto had a fully adequate remedy in the Court of Federal Claims, she was not entitled to APA review in the district court.
By contrast, when we look to the true nature of the claims in this case we conclude that the relief sought by NCMS “may make it appropriate for judicial review to culminate in the entry of declaratory or injunctive relief that requires the [government] to modify future practices” with respect to the disposition of appropriated funds. Bowen, 487 U.S. at 893, 108 S.Ct. at 2731-32. Because only $24,125,000 was allotted to the Cooperative Agreement, NCMS’s claim would require that the remaining $15,875,000 be obligated and made available to NCMS either by supplementation of the Cooperative Agreement or by formation of a new agreement. Thus, NCMS is in effect asking that the Air Force be required to expand the existing contractual relationship or to create a new one to cover the remaining appropriated but unobligated funds. The Tucker Act, however, does not empower the Court of Federal Claims to grant that kind of equitable relief. For that reason, the remedy provided by a Tucker Act suit in the Court of Federal Claims does not serve as the “other adequate remedy in a court” referred to in 5 U.S.C. § 704 that would be sufficient to divest the district court of the authority to conduct APA review in this case.
We therefore reverse the district court’s transfer order. We do not, however, mean to suggest any view as to the merits of the case or any other issue going to the jurisdiction of the district court or its authority to grant the requested relief.
Each party shall bear its own costs for this appeal.

REVERSED AND REMANDED.