Russell Dean **LANDERS,**
et al., **Plaintiffs,**

v.

The **UNITED STATES, Defendant.**

No. 96–368C.

United States Court of Federal Claims.

Nov. 25, 1997.

298

Russell Dean Landers et al., Black Mountain, NC, pro se.

Sheryl L. Floyd, Civil Division, United States Department of Justice, Washington, DC, for defendant, with whom were Frank W. Hunger, Assistant Attorney General, and David Cohen, Director. Marta Ivashkiv, Federal Bureau of Investigation, Washington, DC, of counsel.

## OPINION

MARGOLIS, Judge.

Plaintiffs, who describe themselves as members of foreign sovereign states, brought this case seeking (1) the unconditional release of some members from prison, (2) the "quashing" with prejudice of all criminal actions against members, (3) the "quashing" with prejudice of a civil action that allegedly seized plaintiffs' "foreign state consular abode" and the restoration of this property, (4) recognition of plaintiffs' state's sovereign character by the United States Department of State, (5) an order directing the impaneling of a grand jury to investigate complaints of corruption and racketeering by county officials in Montana, (6) an order directing the United States Secretary of State to serve federal and state courts with written acknowledgment of plaintiffs' sovereignty, and (7) a permanent injunction enjoining defendant "from any further ingress upon" plaintiffs' "foreign states." The action is presently before the Court on defendant's motion to dismiss for lack of jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted. After carefully considering both parties' written submissions, and finding that oral argument is not necessary, the Court concludes that plaintiffs' claims fall outside this Court's jur-

isdiction. Defendant's motion to dismiss is therefore granted.

## FACTS

Plaintiffs claim that they are members of foreign sovereign states and therefore enjoy immunity from the jurisdiction of both the federal and state courts. Plaintiffs allege the occurrence of numerous events which led to the instant suit. On July 7, 1994, plaintiffs filed an Article I "Petition of Grievance" with the Custer County Commissioners seeking redress from "being barred their right to private property" by the Garfield County sheriff and attorney. A Custer County sheriff arrested plaintiffs Rodney Owen Skurdal and Lyle Chamberlin after they served a Custer County judge and Garfield County sheriff with "subpoenas" to testify at a preliminary hearing concerning a search without a warrant. On March 25, 1996, the FBI allegedly arrested plaintiffs LeRoy Michael Schweitzer and Daniel E. Petersen without a warrant. Plaintiffs also allege that the United States District Court for the District of Montana conducted proceedings on March 26 and 28 which denied plaintiffs "all due process, while fully violating the states unalienable Rights." On March 30, 1996, the FBI allegedly arrested plaintiff Richard Emmett Clark without a warrant from his "consular abode" and imprisoned him in the Yellowstone County jail because "he sought right of passage of access to the lawful government." Plaintiffs allege that Richard Clark is unlawfully detained in the Yellowstone County jail. Finally, plaintiffs allege that they are unable to prosecute or defend against various actions because they are barred from their "consular property, records, office equipment, antiques, art, clothes, personal effects, Federal Reserve Credit Notes, food, shelter, right to work and all records of equity court actions...."

Apparently, the private property that plaintiffs claim they are barred from is the real and personal property comprising plaintiffs' headquarters, which plaintiffs call their "consular abode." The consular abode is located on property in Montana once owned by plaintiff Ralph Clark and his wife, Cora Clark ("Clark property"). On November 16, 1993, a Montana state court entered a foreclosure judgment and ordered the sale of the Clark property because the Clarks defaulted on a mortgage held by the Farm Credit Bank of Spokane. The Northwest Farm Credit Services and the United States, acting through the Farmers Home Administration, were joined as defendants with the Clarks because they claimed an interest in the Clark property as junior lien holders. The Montana state court ordered that the proceeds from the sale be used to satisfy the amount the Clarks owed the Farm Credit Bank of Spokane. In accordance with the judgment, the Garfield County sheriff sold the Clark property at a public auction on April 14, 1994. The successor in interest to the Farm Credit Bank of Spokane, AgAmerica, FCB, purchased the property for $45,072.68. On April 14, 1995, the United States, acting through the Farmers Home Administration, exercised its redemption rights and paid AgAmerica, FCB, $49,579.95 for the Clark property. On March 27, 1996, after the period for redemption under Montana law lapsed, the Garfield County sheriff granted the property to the United States by sheriff's deed.

Personal property allegedly belonging to plaintiffs remained on the Clark property. As the new record owner of the Clark property, the United States filed an application for the orderly disposition of this personal property with the United States District Court for the District of Montana on June 25, 1996. The district court issued an order on June 26, 1996 permitting the United States to notify the public of the inventory located at the Clark property so that people could make claims to the property and the United States could eventually sell any unclaimed property at a public auction.

On June 25, 1996, plaintiffs filed this action against the United States seeking (1) the immediate unconditional release of some plaintiffs from custody, (2) the "quashing" with prejudice of the civil eviction action and the complete restoration of the consular abode to its condition on March 25, 1996, (3) the "quashing" with prejudice of all criminal actions against plaintiffs, (4) recognition of plaintiffs' sovereign character by the United

States Department of State, (5) an order directing the impaneling of a grand jury to investigate complaints of official corruption and racketeering by county officials in Yellowstone, Garfield, and Musselshell counties, (6) an order directing the United States Secretary of State to serve federal and state courts with written acknowledgment of plaintiffs' sovereignty, and (7) a permanent injunction to prevent defendant "from any further ingress upon" plaintiffs' "foreign states."

## DISCUSSION

The case is currently before the Court on defendant's motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted. In considering a motion to dismiss, the Court must construe the unchallenged allegations in the complaint in favor of plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988); *Bowman v. United States*, 35 Fed. Cl. 397, 400 (1996). In evaluating a challenge to subject matter jurisdiction, a well-pleaded allegation in the complaint is sufficient to overcome an RCFC 12(b)(1) motion to dismiss. *See Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed.Cir.1997). If a defendant challenges the facts upon which jurisdiction is premised, however, the Court may look outside the complaint and receive evidence for the purpose of resolving the factual dispute. *See Reynolds*, 846 F.2d at 747; *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. 399, 405 (1994). When ruling on an RCFC 12(b)(4) motion to dismiss, the Court may not dismiss unless the plaintiff can prove no set of facts which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Trauma Serv. Group*, 104 F.3d at 1325. Applying these standards to the claims at issue in the present case, the Court concludes that plaintiffs' claims fall outside this Court's jurisdiction and therefore must be dismissed.

■ The Tucker Act, 28 U.S.C. § 1491, serves as the general congressional consent to suit in this court. *See Aetna Cas. & Sur. Co. v. United States*, 228 Ct.Cl. 146, 655 F.2d 1047, 1051 (1981). Under the Tucker Act, this court has jurisdiction over claims against the United States founded upon the Constitution, an Act of Congress, a regulation of an executive department, or an express or implied-in-fact contract with the United States. *See* 28 U.S.C. § 1491(a)(1); *Trauma Serv. Group*, 104 F.3d at 1324. Not every claim involving or invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act, however. *See United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983). The claim must be for money damages against the United States and plaintiff must demonstrate that the source of substantive law relied upon can fairly be interpreted as mandating compensation from the federal government for the damage sustained. *See id.* at 216–17, 103 S.Ct. at 2967–68; *Hamlet v. United States*, 63 F.3d 1097, 1107 (Fed.Cir. 1995). Plaintiffs in the instant case have not alleged an express or implied-in-fact contract with the United States.[1] To invoke the jurisdiction of this Court, therefore, plaintiffs must base their claims on a constitutional provision, federal statute, or regulation providing a substantive right to money damages against the United States. *See Mitchell*, 463 U.S. at 216–17, 103 S.Ct. at 2967–68. Plaintiffs fail to identify any such money-mandating provision.[2] Plaintiffs' claims, therefore, do not fall within one of the categories enumerated by the Tucker Act, and this Court must dismiss plaintiffs' claims for lack of subject matter jurisdiction. *See Aetna*, 655 F.2d at 1051.

---

1. Plaintiffs mention a Treaty on Private Law Rights in their complaint, but do not allege that this treaty is a contract between plaintiffs and the United States.

2. In plaintiffs' complaint and opposition to defendant's motion to dismiss, plaintiffs allege several bases for this Court's jurisdiction: 28 U.S.C. § 1251(b)(1), Rule 17 of the Federal Rules of Civil Procedure, Article IV and VI of the United States Constitution, 28 U.S.C. § 1492, and 28 U.S.C. § 1493(a)(3). Not one of these alleged bases for jurisdiction, however, can fairly be interpreted as mandating the payment of money damages.

Even if plaintiffs based their claims on a money-mandating constitutional provision, federal statute, or regulation, plaintiffs would not prevail against defendant's motion to dismiss because plaintiffs are requesting equitable relief beyond this Court's jurisdiction. The Court of Federal Claims generally does not possess jurisdiction over claims for equitable relief. *See Brown v. United States,* 105 F.3d 621, 624 (Fed.Cir.1997); *Doe v. United States,* 37 Fed.Cl. 74, 79 (1996). This Court may grant equitable relief only in bid protest cases, *see* 28 U.S.C.A. § 1491(b)(1), (2) (West Supp.1997) (replacing § 1491(a)(3)); *Kanemoto v. Reno,* 41 F.3d 641, 644–45 (Fed. Cir.1994); *Boehm v. United States,* 22 Cl.Ct. 511, 518 (1991), or where the request for equitable relief is incidental to a claim for money damages, *see Wheeler v. United States,* 11 F.3d 156, 159 (Fed.Cir.1993); *Bobula v. United States Dep't of Justice,* 970 F.2d 854, 859 (Fed.Cir.1992).

The present case is not a bid protest action, and plaintiffs' requests for equitable relief are not incidental to a claim for monetary damages. In fact, plaintiffs make no claim for monetary relief. Instead, plaintiffs seek the release of certain members from custody, the "quashing" with prejudice of actions in other courts, the restoration of their consular abode, recognition of plaintiffs' sovereign character by the United States Department of State, an order directing the impaneling of a grand jury, an order directing the Secretary of State to serve federal and state courts with written acknowledgment of plaintiffs' sovereignty, and a permanent injunction to prevent defendant "from any further ingress upon" plaintiffs' "foreign states." Because plaintiffs only seek non-monetary relief, this Court lacks the power to entertain plaintiffs' complaint. *See Kanemoto,* 41 F.3d at 644–45; *Calhoun v. United States,* 32 Fed.Cl. 400, 406 (1994), *aff'd,* 61 F.3d 918 (Fed.Cir.1995); *see also Brown,* 105 F.3d at 624 (noting that the Court of Federal Claims does not possess independent jurisdiction over claims for equitable relief and finding appellants' demands for declaratory

or injunctive relief outside the court's jurisdiction); *Security Sav. & Loan Ass'n v. United States,* 26 Cl.Ct. 1000, 1003 (1992) (explaining that the Claims Court cannot issue injunctions unless specifically authorized by statute); *Lott v. United States,* 11 Cl.Ct. 852, 852 (1987) (dismissing a claim requesting the release of a prisoner from jail for lack of jurisdiction).

Finally, the Court notes that although plaintiffs have not referred to the Fifth Amendment of the United States Constitution or used any language typical of a claim for just compensation, the complaint could be liberally construed as an attempt to make a Fifth Amendment takings claim with respect to plaintiffs' consular abode and the personal property thereon. In their complaint, plaintiffs claim they were dispossessed of their consular abode and consular property. They seek the "quashing" with prejudice of the civil action by which plaintiffs' consular abode was allegedly seized [3] and the restoration of their consular abode. For purposes of this motion to dismiss, the Court assumes that plaintiffs are attempting to make a takings claim.

The Court of Federal Claims possesses jurisdiction over claims under the Takings Clause of the Fifth Amendment because the Takings Clause anticipates payment of money damages by the government for its violation. *See Crocker v. United States,* 37 Fed. Cl. 191, 195, *aff'd,* 125 F.3d 1475 (Fed.Cir. 1997). This Court lacks jurisdiction, however, over plaintiffs' claim concerning the seizure of their consular property ("seizure claim") because plaintiffs do not seek just compensation, but the "quashing" with prejudice of a civil action and the return of their consular abode to its previous status. This Court does not have the power to review state court actions. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 1314–15, 75 L.Ed.2d 206 (1983) (noting that review of final judgments of a state court may be had only in the United States Supreme Court); *Dickie v. City of Tomah,* 999 F.2d 252, 254 (7th Cir. 1993) (same). If plaintiffs wish to challenge the Montana state court decision that alleg-

---

**3.** Although plaintiffs' complaint is less than clear, the Court assumes that plaintiffs are referring to the foreclosure judgment issued by a Montana state court on November 16, 1993 and the resulting sale of the Clark property.

edly "seized" their consular abode, plaintiffs' only avenue of review is through the Montana state court system, and then to the United States Supreme Court. *See Phinizy v. Alabama*, 847 F.2d 282, 284 (5th Cir.1988). This Court also cannot order the "restoration" of plaintiffs' consular abode because ordering the restoration of property is equitable relief, *see Froudi v. United States*, 22 Cl.Ct. 290, 294–95 (1991), and with the exception of limited circumstances not relevant here, this Court only has jurisdiction over claims for monetary relief. *See Kanemoto*, 41 F.3d at 644–45; *Calhoun*, 32 Fed.Cl. at 406. Plaintiffs' seizure claim must, therefore, be dismissed pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction.

▆▆▆ Furthermore, even if the Court treated plaintiffs' seizure claim as one for just compensation, it would lack jurisdiction because plaintiffs allege that the government acted illegally. A Tucker Act suit is not available for a takings claim based on unauthorized government action. *See Short v. United States*, 50 F.3d 994, 1000 (Fed.Cir. 1995); *Florida Rock Indus. v. United States*, 791 F.2d 893, 898 (Fed.Cir.1986). To bring a Fifth Amendment takings claim under the Tucker Act, plaintiff must concede the validity of the government action that is the basis of the takings claim. *See Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed.Cir. 1993); *Del–Rio Drilling Programs, Inc. v. United States*, 37 Fed.Cl. 157, 161 (1997). In the present case, however, plaintiffs allege that the government actions taken against them are in violation of their immunity as a foreign state. Plaintiffs' seizure claim challenges the propriety of government action. Such suits sound in tort, and it is well established that the Court of Federal Claims has no jurisdiction over actions that sound in tort. *See* 28 U.S.C. § 1491; *Noel v. United States*, 16 Cl.Ct. 166, 170 (1989); *Montego Bay Imports, Ltd. v. United States*, 10 Cl.Ct. 806, 809–10 (1986). Consequently, plaintiffs' contention that the government actions were unlawful is another basis for the Court's decision to dismiss plaintiffs' seizure claim for lack of subject matter jurisdiction.[4]

## CONCLUSION

For the reasons stated, the Court concludes that plaintiffs' claims are beyond the scope of this Court's jurisdiction. Defendant's motion to dismiss is therefore granted. The clerk will dismiss the complaint. No costs.

---

4. Even if plaintiffs sought just compensation for the "seizure" of their consular abode and alleged that the government actions in question were authorized, dismissal of plaintiffs' claim concerning the seizure of their consular abode would still be appropriate because plaintiffs failed to state a takings claim upon which relief can be granted. To recover under the Takings Clause, plaintiffs must demonstrate that the United States took plaintiffs' property for public use without just compensation. *See Short*, 50 F.3d at 1000; *Murray v. United States*, 817 F.2d 1580, 1583 (Fed. Cir.1987). It is an essential element of a takings claim that the plaintiff possess an ownership interest in the property alleged to have been taken. *See Murray*, 817 F.2d at 1583; *Applegate v. United States*, 35 Fed.Cl. 406, 420 (1996).

Plaintiffs allege that the seizure of their consular abode occurred on March 25, 1996. At that time, however, plaintiff Ralph Clark (apparently the only plaintiff who ever possessed an ownership interest in the property where the consular abode was located) no longer owned the Clark property because this property was sold, pursuant to a foreclosure judgment, at a public auction on April 14, 1994. Thus, even if plaintiffs could prove that the government seized the Clark property on March 25, 1996, plaintiffs would not be entitled to relief because plaintiffs did not possess an ownership interest in the Clark property at that time. Dismissal of plaintiffs' seizure claim pursuant to RCFC 12(b)(4) would, therefore, be appropriate.