# United States Court of Appeals for the Federal Circuit

---

**COLUMBUS REGIONAL HOSPITAL,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2020-1226

---

Appeal from the United States Court of Federal Claims in No. 1:18-cv-01299-RAH, Judge Richard A. Hertling.

---

Decided: March 10, 2021

---

DEREK READ MOLTER, Ice Miller LLP, Indianapolis, IN, argued for plaintiff-appellant. Also represented by BRENT W. HUBER.

MARIANA TERESA ACEVEDO, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by DEBORAH ANN BYNUM, JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR.; RAMONCITO JOSE DEBORJA, Office of General Counsel, United States Federal Emergency Management Agency, Washington, DC.

---

Before TARANTO, BRYSON, and HUGHES, *Circuit Judges.*

BRYSON, *Circuit Judge.*

Columbus Regional Hospital ("Columbus") appeals from two orders of the United States Court of Federal Claims ("the Claims Court") in which the court dismissed all the claims of Columbus's complaint against the United States. The complaint relates to the action of the Federal Emergency Management Agency ("FEMA") in recovering certain disaster-assistance funds that had previously been distributed to Columbus.

In its complaint, Columbus alleged that FEMA's recovery of those funds breached Columbus's contractual rights and constituted an illegal exaction. The Claims Court dismissed Columbus's illegal exaction claim under Rule 12(b)(6) of the Rules of the Court of Federal Claims. In a separate order, the court dismissed Columbus's contract claims for lack of jurisdiction under Rule 12(b)(1) of those rules after concluding that Columbus had not established that it had an express or implied contract with FEMA, or that it was a third-party beneficiary of an agreement between FEMA and the State of Indiana.

We affirm the court's dismissal of the illegal exaction claim. With regard to the express and implied contract claims, we agree with the Claims Court that those claims should be dismissed, but we hold that they should be dismissed on the merits under Rule 12(b)(6) rather than for lack of jurisdiction under Rule 12(b)(1). With regard to the third-party beneficiary claim, we vacate the court's dismissal of that claim and remand for further proceedings on that issue.

I

A

The underlying facts are largely undisputed. In 2008, severe storms hit the State of Indiana, causing extensive

flooding in several counties. Columbus Regional Hospital, a hospital in Bartholomew County south of Indianapolis, sustained significant damage as a result of the flooding. In response, President Bush declared a regional disaster under the Stafford Act, 42 U.S.C. §§ 5121–5206, which authorized FEMA to provide assistance to the affected regions through disaster grants. Indiana; Major Disaster and Related Determinations, 73 Fed. Reg. 35,146-02 (June 20, 2008).

Pursuant to the disaster declaration, FEMA and the State of Indiana entered into an agreement for disaster assistance. FEMA agreed to provide federal assistance, and the State agreed to be the grantee for all grant assistance provided under the Stafford Act, with the exception of assistance provided to individuals and households. The agreement required Indiana to comply with all applicable laws and regulations, including relevant provisions of the Stafford Act, FEMA regulations, and OMB circulars. Those sources of law were incorporated into the agreement by reference. FEMA also reserved the right to recover assistance funds if they were spent inappropriately or if they were distributed through error, misrepresentation, or fraud.

Following the execution of the FEMA-Indiana agreement, Columbus submitted its official request for assistance to FEMA pursuant to 44 C.F.R. § 206.202(c).[1] Columbus asserts that it sent the request directly to FEMA, instead of through the State of Indiana. After receiving the request, FEMA collaborated with Columbus to prepare project worksheets in which the two defined the scope of work and the amount of funding for individual recovery projects. FEMA approved more than 75 of the

---

[1]     Unless stated otherwise, we cite the current versions of the statutes and regulations, which are not materially different from the 2008 versions.

project worksheets, totaling approximately $94 million in recovery funds.

Columbus received assistance funds under the FEMA-Indiana agreement according to the approved project worksheets. The funds were transmitted to Columbus through the State of Indiana, and Columbus applied the funds to designated restoration and mitigation contracts.

In 2013, the Inspector General of the Department of Homeland Security issued an audit report finding that Columbus had committed procurement violations in connection with four of those contracts. The report recommended that FEMA recover $10.9 million of the assistance funds because of the violations. FEMA adopted the Inspector General's recommendations. FEMA initially concluded that recovery of the full $10.9 million was justified, but it later reduced that amount to $9,612,831.19.

Columbus appealed FEMA's decision within the agency. In 2017, FEMA denied Columbus's appeal, finding that the agency had correctly applied 2 C.F.R. § 215.62 when recovering the disputed costs. Columbus did not seek judicial review of the agency's decision. Columbus represents that FEMA recovered the disputed costs from Columbus in April 2014.

B

In 2018, Columbus filed its complaint in the Claims Court, alleging four counts of contract breach and a fifth count of illegal exaction.

Columbus first alleged that there was an express contract between FEMA and Columbus, and that FEMA's recovery of the disputed costs breached statutes and regulations incorporated by reference, including section 705 of the Stafford Act. Relatedly, Columbus alleged that FEMA's recovery of the disputed costs breached 2 C.F.R. § 215.62, a FEMA regulation. In the alternative, Columbus alleged that there was an implied-in-fact contract

between FEMA and Columbus, and that FEMA breached the same provisions, section 705 of the Stafford Act and 2 C.F.R. § 215.62.  Columbus further alleged that even if there was no express or implied contract between Columbus and FEMA, Columbus was a third-party beneficiary of the FEMA-Indiana agreement, and that FEMA breached Columbus's third-party rights by recovering the disputed costs.  Lastly, Columbus alleged that FEMA's recovery of the disputed costs amounted to an illegal exaction because it violated section 705 of the Stafford Act.

In response to the government's motion to dismiss, the Claims Court issued two dismissal orders.  First, the court dismissed Columbus's illegal exaction claim for failure to state a claim on which relief could be granted.  *Columbus Reg'l Hosp. v. United States*, No. 18-1299C, slip op. at 2 (Fed. Cl. Aug. 14, 2019).  The court held that there could be no illegal exaction because Columbus did not have a property interest in the disputed funds and because FEMA's appeal process protected Columbus's rights to due process. *Id.* at 1–2.

In a second order, the court dismissed Columbus's contract-based claims for lack of jurisdiction.  *Columbus Reg'l Hosp. v. United States*, 145 Fed. Cl. 217, 228 (2019).  Although the court found the FEMA-Indiana agreement to be a binding contract, the court concluded that Columbus had no rights against FEMA under that contract or otherwise. *Id.* at 223–28.  According to the court, Columbus failed to plead "jurisdictional facts" demonstrating the existence of a contract over which the court had Tucker Act jurisdiction. *Id.*  The court therefore dismissed Columbus's express contract, implied contract, and third-party beneficiary claims under Rule 12(b)(1).  *Id.*

Columbus appealed both orders.  The parties raise a total of seven issues on appeal.

## II

### A

At the outset, we address the government's argument that the FEMA-Indiana agreement cannot be treated as a binding contract, but instead must be regarded as a gratuitous contribution, and that all of Columbus's contract-based claims should be dismissed for that reason.

The Claims Court held the FEMA-Indiana agreement to be a binding contract. *Columbus*, 145 Fed. Cl. at 223. The court based its ruling on *State of Texas v. United States*, 537 F.2d 466 (Ct. Cl. 1967), which the court viewed as controlling on the question whether the disaster-assistance agreement in this case can qualify as a binding contract. *Columbus*, 145 Fed. Cl. at 222–23.

The government argues that the FEMA-Indiana agreement constitutes a gratuitous grant from a sovereign, not a binding contract. According to the government, *State of Texas* is distinguishable because the Court of Claims in that case "did not 'hold' the agreement was a contract, but instead simply accepted that premise for purposes of reaching the merits and finding in the Government's favor." Appellee's Br. 41. The government also argues that the FEMA-Indiana agreement lacks consideration, and that *State of Texas* is not controlling authority on that question because the court's opinion in that case was silent regarding the terms of the pertinent agreement.

We hold that the FEMA-Indiana agreement constitutes a binding contract between FEMA and Indiana. In prior cases, we have followed our predecessor court in treating federal grant agreements as contracts when the standard conditions for a contract are satisfied, including that the federal entity agrees to be bound. *See, e.g., San Juan City Coll. v. United States*, 391 F.3d 1357, 1360–62 (Fed. Cir. 2004) (treating a "Program Participation Agreement" and related grants under the Higher Education Act as a

contract); *see also*, in addition to the *State of Texas* case, *Dep't of Nat. Res. v. United States*, 227 Ct. Cl. 552, 554 (1981); *Kania v. United States*, 650 F.2d 264, 268 (Ct. Cl. 1981); and *Arizona v. United States*, 494 F.2d 1285, 1287–88 (Ct. Cl. 1974).

In *State of Texas*, the Court of Claims applied that principle in a decision involving a disaster-assistance grant agreement under the Federal Disaster Act, 42 U.S.C. § 1855 (1950). Following a devastating hurricane, the federal Office of Emergency Planning ("OEP") agreed to provide financial assistance to two Texas counties. Dissatisfied with the OEP's disallowance of certain funds under the agreement, the State filed suit in the Court of Claims, alleging breach of contract. *State of Texas*, 537 F.2d at 467–68. The government moved to dismiss, arguing *inter alia* that the disaster-assistance agreement was not "a binding contract in the traditional sense." *Id.* at 468. The Court of Claims disagreed. It concluded that OEP's agreement to provide assistance on specified terms required OEP to comply with those terms. *Id.* at 468–69. In support, the court cited a Comptroller General opinion stating that an executed disaster-assistance agreement imposes enforceable obligations on both parties to the agreement. *Id.* at 469 n.2. After concluding that OEP was bound by the agreement, however, the Court of Claims held that OEP had performed its obligations. The court therefore dismissed Texas's petition. *Id.* at 469.

The government contends that the Court of Claims' conclusion that the disaster-assistance agreement in *State of Texas* constituted a binding contract was dictum and should not be followed. It is true that because the court ruled in favor of the government on the merits, the court's characterization of the agreement was not strictly necessary to the result. Nonetheless, the court's conclusion that the agreement constituted a binding contract was an important step in the court's chain of reasoning, was based on prior precedent, and has been followed in subsequent

cases.[2] We see no justification for disregarding it as precedent, and thus we proceed to analyze whether the FEMA-Indiana agreement satisfies the standard conditions for a contract.

To conduct that analysis, we apply the traditional four-part test for the existence of a government contract: (1) mutuality of intent to contract; (2) offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States. *See Hometown Fin., Inc. v. United States*, 409 F.3d 1360, 1364 (Fed. Cir. 2005).

Regarding the first element, mutual intent to contract, FEMA regulations describe "FEMA-State Agreements" as "impos[ing] binding obligations on FEMA, States, their local governments, and private nonprofit organizations within the States in the form of conditions for assistance which are legally enforceable." 44 C.F.R. § 206.44(a). That regulation is incorporated by reference in the FEMA-

---

[2]    Contrary to the government's suggestion that the Court of Claims in *State of Texas* "simply accepted [the] premise" that the agreement was a contract (Appellee's Br. 41), the court noted that "both parties devote[d] considerable argument as to whether their Disaster Assistance Agreement is . . . a binding contract," and the court expressly concluded that the agreement obligated OEP to provide assistance as called for in the agreement. *State of Texas,* 537 F.2d at 468. Significantly, one judge concurred in the judgment. He explained that he would have assumed, arguendo, that the agreement was a binding contract, instead of "holding flatly that the Federal-State Disaster Assistance Agreement" was a contract. *Id.* at 473–74 (Nichols, J., concurring). The concurring opinion makes clear that the majority addressed, and rejected, the argument that the disaster agreement was a gratuitous contribution rather than a binding contract.

Indiana agreement, and it is objective evidence of the parties' intent to be bound by the agreement. Furthermore, the language of the agreement itself speaks in terms of binding obligations, not aspirations. *See, e.g.*, J.A. 1023 ("FEMA and the State agree to take measures to deliver assistance to individuals, households, and governments as expeditiously as possible, consistent with Federal laws and regulations. To that end, the following terms and conditions apply . . . ."); J.A. 1024 ("The Grantee agrees to comply with all applicable laws and regulations . . . .").

The second element, offer and acceptance, is easily satisfied in this case. An offer occurred when FEMA drafted the documents bearing the details of the grant agreement and presented those documents to the State. Those actions evinced FEMA's willingness to enter into a bargain and justified Indiana's understanding that its assent would consummate the bargain. *See* Restatement (Second) of Contracts § 24 (1981) (defining "offer"); *see also Chattler v. United States*, 632 F.3d 1324, 1330 (Fed. Cir. 2011) (applying that definition of an offer). Acceptance was effected when the parties' authorized agents signed the agreement. *See Total Med. Mgmt., Inc. v. United States,* 104 F.3d 1314, 1320 (Fed. Cir. 1997) ("Here, the existence of the negotiated, signed MOUs evidences offer and acceptance.").

The third element, consideration, turns on the conditions attached to FEMA's grants. Indiana agreed to comply with an array of requirements attached to the receipt, use, and distribution of the grant money. For example, Indiana agreed to provide "technical advice and assistance to eligible subrecipients" and to ensure that "all potential applicants are aware of available public assistance." 44 C.F.R. § 206.202(b)(1) and (b)(3). If Indiana used grant money to repair flood damage in its own buildings, it was required to "obtain and maintain flood insurance in the amount of eligible disaster assistance." *Id.* § 206.252(d). In addition, Indiana agreed to act on FEMA's behalf to recover any funds that were dispensed "through error,

misrepresentation, or fraud, or if funds are spent inappropriately." J.A. 1026. If Indiana failed to recover such funds within a 90-day period, it agreed to reimburse FEMA for the federal share of those awards. *Id.*

The conditions attached to the disaster grants constitute consideration because they imposed a variety of duties on Indiana in implementing the FEMA-Indiana agreement. *See* Restatement (Second) of Contracts § 71 cmt. d (1981) (noting that consideration may consist of performance or a return promise to perform, and performance "may be a specified act of forbearance, or any one of several specified acts or forbearances of which the offeree is given the choice, or such conduct as will produce a specified result"); *see also McGee v. Mathis*, 71 U.S. 143, 155 (1866) ("It is not doubted that the grant by the United States to the State upon conditions, and the acceptance of the grant by the State, constituted a contract. All the elements of a contract met in the transaction,—competent parties, proper subject-matter, sufficient consideration, and consent of minds.").

The government argues that the agreement lacks bargained-for consideration because it is merely a form agreement, without negotiated terms, that implements disaster-assistance procedures. It is well settled, however, that a standard-form agreement without negotiated terms can be a binding contract if it is not unreasonable or fraudulent. *See, e.g.*, *Astra USA, Inc. v. Santa Clara Cty., Cal.*, 563 U.S. 110, 113 (2011); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–94 (1991); *see also* Restatement (Second) of Contracts § 211 (1981). The fact that the parties' consideration in this case was not subject to haggling does not render the FEMA-Indiana agreement non-binding.

The government does not argue that the standard-form agreement used in this case was unreasonable or unfair to FEMA. It could hardly do so, as the form is FEMA's own. Moreover, at least some of the conditions imposed on

Indiana confer a benefit on the government, such as Indiana's promises to serve as a collector or reimburser of funds procured by fraud and to report employees who have committed drug offenses.

Finally, the government cannot, and does not, dispute that the fourth element, actual authority, is satisfied.

For those reasons, we reject the government's argument that the FEMA-Indiana agreement is not a binding contract between FEMA and the State of Indiana.

B

Columbus's first argument on appeal is that the Claims Court applied the wrong standard when it dismissed Columbus's contract-based claims for lack of subject-matter jurisdiction under Rule 12(b)(1). Columbus contends that it does not need to prove the existence of a contract with the government in order to invoke the court's jurisdiction, but only needs to plead a non-frivolous allegation of such a contract. According to Columbus, its allegations easily clear that bar, and the court therefore erred by dismissing the contract-based claims on jurisdictional grounds.

We agree that the Claims Court applied the wrong standard when dismissing under Rule 12(b)(1).[3] In prior cases, we have cautioned courts to separate the issue of subject-matter jurisdiction, a Rule 12(b)(1) inquiry, from the issue of whether a complainant's allegations state a viable claim for relief, a Rule 12(b)(6) inquiry. *See, e.g.*, *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011). "The former determines whether the plaintiff

---

[3]    The differences between the Rules of the Court of Federal Claims and the Federal Rules of Civil Procedure are immaterial for the purposes of this opinion. Thus, we simply refer to the respective rules as Rule 12(b)(1) and Rule 12(b)(6).

has a right to be in the particular court and the latter is an adjudication as to whether a cognizable legal claim has been stated." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (3d ed.).

As a general rule, if a plaintiff alleges breach of a contract with the government, the allegation itself confers power on the Claims Court to decide whether the claim has merit. *Hanlin v. United States*, 214 F.3d 1319, 1321 (Fed. Cir. 2000); *Total Med. Mgmt.,* 104 F.3d at 1319; *Gould, Inc. v. United States*, 62 F.3d 925, 929–30 (Fed. Cir. 1995); *Lewis v. United States*, 70 F.3d 597, 602 (Fed. Cir. 1995) (citing *Montana-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 249 (1951)). The exception is when the plaintiff's allegations are frivolous, wholly insubstantial, or made solely for the purpose of obtaining jurisdiction. *Lewis*, 70 F.3d at 602 (citing *Bell v. Hood*, 327 U.S. 678, 682–83 (1946), and *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)). Thus, in order to overcome the government's motion to dismiss under Rule 12(b)(1), Columbus was merely required to set forth a non-frivolous allegation of breach of a contract with the government. *See Engage Learning*, 660 F.3d at 1353.[4]

_____

[4] That rule is a specific application of a more general principle regarding allegations of subject-matter jurisdiction. As the Supreme Court explained in *Shapiro v. McManus*, 577 U.S. 39, 45 (2015) (citing *Bell*, 327 U.S. at 682–83), "[w]e have long distinguished between failing to raise a substantial federal question for jurisdictional purposes . . . and failing to state a claim for relief on the merits; only 'wholly insubstantial and frivolous' claims implicate the former." *See also Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974) (A dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is "so insubstantial, implausible, foreclosed by prior decisions

The Claims Court did not apply that standard.  Despite couching its rulings in jurisdictional terms, the court disposed of Columbus's contract-based claims on the merits. The court examined whether there was in fact a contract between FEMA and Columbus, not whether Columbus's contract-based allegations were non-frivolous.  *See, e.g.*, *Columbus*, 145 Fed. Cl. at 220 ("[Columbus] has failed to establish the jurisdictional facts that demonstrate it either holds a contract with FEMA or is a third-party beneficiary of the State of Indiana's contract with FEMA . . . ."); *id.* at 223 ("The existence of an express contract is a jurisdictional fact, which the Hospital as the plaintiff has the burden to prove in order to maintain its complaint for breach of contract against FEMA."); *id.* at 225 ("The Hospital has not met its burden of proving this alleged consideration, and thus has failed to allege a jurisdictional fact.").[5]

Although the Claims Court applied the wrong standard in dismissing under Rule 12(b)(1), that mistake does not necessarily give rise to reversible error.  The government moved to dismiss under both Rules 12(b)(1) and 12(b)(6), and the Claims Court provided a thorough analysis of whether Columbus's contract-based allegations state a claim for relief.  If we conclude that Columbus's contract-based allegations fail to state a cognizable claim, we can convert the court's Rule 12(b)(1) dismissal into a Rule

---

of this Court, or otherwise completely devoid of merit as not to involve a federal controversy."); *Boeing Co. v. United States*, 968 F.3d 1371, 1383 (Fed. Cir. 2020) (same principle applied to an illegal exaction claim in the Court of Federal Claims).

[5]    The court's ruling on the Rule 12(b)(1) motion was not based on a facial jurisdictional flaw in the complaint, such as the failure to allege an injury in fact sufficient to establish standing in *Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350, 1354–57 (Fed. Cir. 2018).

12(b)(6) dismissal.  *See Lewis*, 70 F.3d at 604.  We therefore proceed to address whether Columbus's contract-based claims are truly frivolous and, if not, whether the court's order dismissing those claims can be upheld under Rule 12(b)(6).

C

On the merits, Columbus first argues that the Claims Court should not have dismissed its express contract claim. The court dismissed that claim on the ground that "by statute, implementing regulation, and the terms of the [FEMA-Indiana] Agreement, only the State of Indiana could receive Stafford Act funds as a grantee." *Columbus*, 145 Fed. Cl. at 223.  For that reason, the court concluded that only FEMA and Indiana could be in a contractual relationship. *Id*. at 223–24.  Furthermore, the court determined that the project worksheets shared between FEMA and Columbus were of no moment in establishing a contractual relationship, contrary to Columbus's contention, because those worksheets made clear that Indiana was the sole grantee for the Stafford Act assistance.  *Id*.

Columbus argues that the court placed undue emphasis on the FEMA-Indiana agreement and disregarded the negotiations and documents exchanged between FEMA and Columbus.  Columbus contends that FEMA and Columbus entered into an express contract through Columbus's request for assistance (an offer) and FEMA's subsequent approval of the project worksheets (acceptance), in which FEMA committed to providing Columbus $94 million in disaster-assistance funds.  That express contract, Columbus argues, included the FEMA-Indiana agreement because the request for assistance and the project worksheets incorporated that agreement by reference. Columbus further contends that the binding obligations imposed on Columbus pursuant to the Stafford Act, FEMA regulations, and OMB circulars, constitute consideration

sufficient to support a finding of an express contract between FEMA and Columbus.

Columbus's express contract claim survives the government's motion to dismiss under Rule 12(b)(1). FEMA and Columbus exchanged signed documents specifying the scope and funding for Columbus's recovery projects, and it is not specious to suggest that Columbus's obligations under the FEMA-Indiana agreement, *see* 44 C.F.R. § 206.44(a), amount to consideration to FEMA. Columbus's allegations of an express contract are thus sufficient to confer jurisdiction on the Claims Court.

While we agree with Columbus's jurisdictional argument, we conclude that Columbus's allegations fall flat upon analysis under Rule 12(b)(6). That is because Columbus's allegations do not establish mutual intent to contract between FEMA and Columbus.

As the government explains, the FEMA-Indiana agreement was the centerpiece in the relationship between FEMA and Columbus. The agreement served as the prerequisite to Columbus's receipt of disaster assistance. *See* 44 C.F.R. § 206.44(a) ("FEMA-State Agreements") ("No FEMA funding will be authorized or provided to any grantees or other recipients . . . until such time as this Agreement for the Presidential declaration has been signed . . . ."). It set out a two-tier framework for distributing funds and obligating grantees in accordance with the Stafford Act. It provided that the State would be the grantee for all grant assistance provided under the Stafford Act. And it recited that FEMA and the State agreed to take measures to deliver assistance to individuals, households, and governments.

FEMA regulations underscore that states are the direct recipients of Stafford Act funding, thus providing further separation between FEMA and Columbus. *See* 44 C.F.R. § 206.202(a) ("Under this section the State is the recipient. As recipient you are responsible for processing

subgrants to applicants . . . ."); *id.* § 206.201(m) ("Recipient means the government to which a grant is awarded, and which is accountable for the use of the funds provided. . . . Generally, except [for host-state sheltering], the State for which the emergency or major disaster is declared is the recipient."); *id.* § 206.201(o) ("Subrecipient means the government or other legal entity to which a subgrant is awarded and which is accountable to the recipient for the use of the funds provided.").

Contrary to Columbus's suggestion, the request for assistance and the project worksheets did not create express contract rights for Columbus against FEMA. The request for assistance mandated that "[s]ubmission of this form is required to obtain or retain benefits under the Public Assistance Program,"[6] and expressly referenced Title 44 of the Code of Federal Regulations. Section 206.202 of Title 44 distinguishes between states, which are "recipients," and other entities that receive "subgrants." Section 206.202(d) characterizes the practice of completing project worksheets as an administrative task for "identify[ing] the eligible scope of work" and producing a "quantitative estimate for the eligible work." Thus, the request for assistance and the project worksheets did not create an express contract between FEMA and Columbus. Those documents were inextricably linked with the FEMA-Indiana agreement and FEMA regulations, both of which separate

---

[6]    "[The] Public Assistance Program means the FEMA program establish [sic] under Subchapter IV of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, as amended, 42 U.S.C. 5121, et seq., which provides grants to States, local governments, Indian tribes and private nonprofit organizations for emergency measures and repair, restoration and replacement of damaged facilities." 44 C.F.R. § 295.50.

FEMA from Columbus by establishing a contractual relationship between FEMA and only the State of Indiana.

Columbus's claim of an express contract thus fails because Columbus's allegations do not establish mutual intent to contract between FEMA and Columbus. For that reason, we uphold the dismissal of Columbus's express contract claim, although we do so on the merits rather than for lack of jurisdiction.

D

Columbus next contends that it had at least an implied-in-fact contract with FEMA and that the Claims Court should not have dismissed that count of its complaint. The court dismissed Columbus's claim of an implied-in-fact contract for the same reasons that it dismissed Columbus's express contract claim: The FEMA-Indiana agreement and FEMA regulations established a two-tier framework for disaster assistance. *Columbus*, 145 Fed. Cl. at 225. Under that framework, FEMA entered into a grant agreement with Indiana, and Indiana in turn provided a subgrant to Columbus. There was no mutual intent to contract between FEMA and Columbus, according to the court, because Indiana was the required intermediary and the only direct recipient of funds. *Id.* In addition, the court concluded that Columbus's allegations failed to establish consideration that would support a contract between FEMA and Columbus. *Id.*

An implied-in-fact contract with the government requires proof of (1) mutuality of intent, (2) consideration, (3) an unambiguous offer and acceptance, and (4) actual authority on the part of the government's representative to bind the government in contract. *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003).

Like Columbus's claim of an express contract, Columbus's implied-in-fact contract claim survives the government's motion to dismiss under Rule 12(b)(1). We do not

consider Columbus's allegations to be pretextual or so frivolous as to warrant dismissal on jurisdictional grounds.

As in the case of the express contract claim, however, mutual intent to contract is the weak link in Columbus's argument on the merits of its implied contract claim. Columbus alleges that the following facts support mutual intent to contract: Columbus and FEMA conferred over the terms of numerous project worksheets. The State of Indiana played no meaningful role in formulating or administering those worksheets. Indiana also played no meaningful role in preparing Columbus's request for assistance; instead, Columbus prepared and sent that request by itself, even though doing so was contrary to the procedures set forth in 44 C.F.R. § 206.202(c). Finally, FEMA sought to recover the disputed costs from Columbus, not from Indiana.

Notwithstanding those factual allegations, we conclude that the parties' conduct did not establish mutual intent to contract between FEMA and Columbus. FEMA regulations make clear that the FEMA-Indiana agreement was a prerequisite to Columbus's receipt of disaster assistance and to both the request for assistance and the project worksheets. *See* 44 C.F.R. §§ 206.44(a), 206.202(c)–(d). In turn, both the FEMA-Indiana agreement and FEMA's regulations established a two-tier framework for disaster assistance in which Columbus was plainly separated from FEMA by the State of Indiana. *See id.* §§ 206.201(m), 206.201(o), 206.202(a). Furthermore, the request for assistance referenced Title 44 of the Code of Federal Regulations, which distinguishes between "recipient" states and other entities receiving "subgrants" from the states. *See id.* § 206.202(a)–(e). And FEMA's regulations describe project worksheets as implementing the FEMA-Indiana agreement, not as creating a separate contractual relationship between FEMA and Columbus. *See id.* § 206.202(d). Regarding the departure from the prescribed procedure for submitting the request for assistance, that conduct did not

change the legal status of the parties' relationship, a relationship that was founded on the FEMA-Indiana agreement and FEMA regulations enabling Columbus to receive disaster assistance in the first instance. The regulations, which govern the relationships among Columbus, Indiana, and FEMA, make clear that Columbus did not have a contract with FEMA, express or implied.

For those reasons, we hold that Columbus's allegations of an implied-in-fact contract fail to state a cognizable claim for relief. We therefore affirm the dismissal of Columbus's implied contract claim, albeit on Rule 12(b)(6) grounds.

E

Columbus's final contract-based claim is that it is entitled to third-party beneficiary status with regard to the FEMA-Indiana contract.

The test for third-party beneficiary status is whether the contract reflects the intent of the contracting parties to benefit a third party. *Dewakuku v. Martinez*, 271 F.3d 1031, 1041 (Fed. Cir. 2001). The intended benefit must be direct. *Id.* The third party need not be specifically identified but must be in a class clearly intended to be benefited. *Montana v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997). "For determination of contractual and beneficial intent when, as here, the contract implements a statutory enactment, it is appropriate to inquire into the governing statute and its purpose." *Roedler v. Dep't of Energy*, 255 F.3d 1347, 1352 (Fed. Cir. 2001).

Columbus asserts that it falls within an identified class of beneficiaries, namely the agencies and instrumentalities of the government of Bartholomew County. The FEMA-Indiana agreement was clearly intended to benefit that class, Columbus argues, because the ultimate purpose of the agreement was to provide disaster assistance to

discrete entities such as Columbus, not merely to the state government.

The government does not challenge Columbus's assertions that it was benefited by FEMA funding or that it fell within a class intended to be benefited. Instead, the government argues that the FEMA-Indiana agreement does not reflect an intent to directly benefit Columbus or its class, because the agreement did not identify Columbus by name and only named the recipient counties. The government argues that under Columbus's logic any entity in the designated counties that might benefit in any way from the disaster-recovery assistance would be a third-party beneficiary, thus stretching that doctrine beyond its breaking point.

Columbus's showing that the FEMA-Indiana agreement was intended to benefit Columbus is sufficient to survive the government's motion to dismiss. To begin with, the agreement cited and incorporated the Stafford Act, which is designed to provide an orderly means for the federal government to assist both states and local governmental entities. 42 U.S.C. § 5121(b). A "local government" is defined to include "a county" and its "agency or instrumentality." *Id.* § 5122(8). The FEMA-Indiana agreement identified Bartholomew County as a region intended to receive disaster assistance, and Columbus alleges it is a unit of local government under state and federal law.[7]

---

[7] The government states in passing that Columbus is not "a government," but is a "nonprofit entity within one." Appellee's Br. 31. However, the government does not take issue with Columbus's assertion that it was statutorily eligible for disaster-assistance funds as a component of a local government. The government also points out that there are various requirements that grantees and applicants need to satisfy before they may receive Stafford Act

Contrary to the government's contention, the class of potential third-party beneficiaries of the FEMA-Indiana contract was not unbounded. FEMA's procedures limit the class of third-party beneficiaries by requiring potential subgrantees to submit both a request for assistance and project worksheets; FEMA must approve both before assistance funds are distributed. *See* 44 C.F.R. § 206.202; *see also* Appellee's Br. 31.

The agreement was clearly intended to directly benefit entities in Columbus's class—the agencies and instrumentalities of the Bartholomew County government. The first general condition of the FEMA-Indiana agreement was that "FEMA and the State agree to take measures to deliver assistance to individuals, households, and governments." J.A. 1023. Another general condition was that "FEMA will give first priority to assistance for individuals and households, [and] emergency work for protection of public health and safety." *Id.* That condition is further evidence that the agreement was intended to benefit Columbus directly, inasmuch as Columbus is the only emergency hospital in a ten-county region in southeastern Indiana.

In rejecting Columbus's claim of third-party rights, the Claims Court relied on the Supreme Court's decision in *Astra USA, Inc. v. Santa Clara County, Cal.*, 563 U.S. 110 (2011), and our decision in *Sioux Honey Ass'n v. Hartford Fire Insurance Co.*, 672 F.3d 1041 (Fed. Cir. 2012). *Columbus*, 145 Fed. Cl. at 225–228. The Claims Court reasoned that the contract in this case, like the contracts in those cases, implements a complex statutory program in which Congress has not provided subgrantees a private right of

---

funding. Again, however, the government does not contend that Columbus failed to satisfy any of those steps.

action, and that recognizing third-party claims would interfere with the operation of the statutory program. *Id.*

The government agrees with the Claims Court that the Supreme Court's decision in *Astra* stands for the proposition that "permitting a party to sue as a third party beneficiary where the contracts are intertwined with a statutory scheme that does not grant a private right of action would render the absence of that right meaningless." Appellee's Br. 28. For that reason, according to the government, the FEMA-Indiana contract cannot be construed to grant third-party rights to Columbus or other similarly situated entities. Columbus responds that the alignment of the parties in this case is fundamentally different than in *Astra*, and that, unlike in *Astra*, Columbus is not seeking an end-run around the government's exclusive enforcement authority.

In *Astra*, the Supreme Court dealt with a statute that empowered the Department of Health and Human Services ("HHS") to enter into standard-form contracts with drug manufacturers imposing price ceilings on the manufacturers' sales to certain healthcare facilities. 563 U.S. at 113–15. Alleging that the drug manufacturers had violated the terms of those contracts, a plaintiff healthcare provider sought to enforce the contractual price ceilings as a third-party beneficiary. *Id.* at 116.

The Supreme Court rejected the plaintiff's theory. The Court explained that the contracts were "not transactional, bargained-for contracts," and merely "incorporate[d] statutory obligations." *Id.* at 113, 118. As a result, the Court ruled, a third-party suit to enforce the contracts' price ceilings was "in essence a suit to enforce the statute itself." *Id.* at 118. That was problematic, the Court explained, because Congress gave HHS exclusive enforcement rights against the manufacturers, and "it would make scant sense" to allow third parties to sue on standard-form contracts parroting statutory obligations when the third

parties could not sue under the statutes themselves. *Id.* at 114.

We agree with Columbus that the analysis in *Astra* does not apply here. The Court in *Astra* refused to grant the plaintiffs third-party beneficiary status because doing so would have conflicted with a statutory scheme that gave enforcement power exclusively to the government and not to private parties.

This case is the converse of *Astra*. Columbus is not seeking enforcement powers that would compete with, supplement, or interfere with, the government's enforcement powers. Instead, Columbus is seeking enforcement rights *against* the government.

Principles of contract law and limitations on private rights of action both counsel against granting third-party enforcement rights when those rights would overlap with the enforcement rights of the government as the contracting party. *See Astra*, 563 U.S. at 118 (quoting J. Murray, *Corbin on Contracts* § 45.6, p. 92 (rev. ed. 2007) ("The distinction between an intention to benefit a third party and an intention that the third party should have the right to enforce that intention is emphasized where the promisee is a governmental entity.")). That concern, however, is inapplicable where, as here, the third party is not seeking to supplement or displace the role of the government as the enforcing party but is seeking to enforce rights against the government. FEMA's enforcement powers under the Stafford Act[8] are thus irrelevant because Columbus is attempting to enforce obligations against FEMA. Permitting

---

8    By statute and regulation, FEMA has various enforcement powers against grantees and subgrantees. *See, e.g.*, 42 U.S.C. § 5157 ("Penalties"); *id.* § 5155(c) ("Recovery of duplicative benefits"); 44 C.F.R. § 206.14 ("Civil enforcement"); *id.* § 206.116 ("Recovery of funds").

Columbus to sue in this case does not raise the concerns that drove the Court's decision in *Astra*, because the Stafford Act does not grant any entity enforcement rights against the government that would be disrupted by granting third-party beneficiary status to Columbus. *Astra* therefore does not preclude granting third-party rights to a party in Columbus's position.[9]

Because the FEMA-Indiana agreement evinces a clear intent to directly benefit a class that includes Columbus, we hold that Columbus alleges a cognizable claim of third-party rights. We therefore vacate the Claims Court's dismissal of that claim.

F

Columbus's final point of error is that the Claims Court should not have dismissed Columbus's claim that the government's recovery of the disputed costs constituted an illegal exaction. The court dismissed that claim under Rule 12(b)(6), reasoning that there was no illegal exaction in this case because Columbus did not have a property interest in the disputed funds and because Columbus's due process rights were satisfied by FEMA's internal appeals process. *Columbus Reg'l Hosp. v. United States*, No. 18-1299C, slip op. at 1–2 (Fed. Cl. Aug. 14, 2019).

---

[9]    Our decision in *Sioux Honey* is distinguishable on the same ground. Like the plaintiff in *Astra*, the *Sioux Honey* plaintiffs sought to step into the government's shoes to enforce a contractual obligation to collect duties from foreign importers violating anti-dumping laws. *Sioux Honey*, 672 F.3d at 1057–58. We rejected the plaintiffs' third-party claims, explaining that Congress vested the government, not domestic producers, with the authority to enforce anti-dumping duties, and that a private right of action would undermine Congress's chosen enforcement mechanism. *Id.* at 1058–59 (quoting *Astra*, 563 U.S. at 118).

An illegal exaction occurs when the plaintiff has paid money to the government and seeks return of the money that was "improperly . . . taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Virgin Islands Port Auth. v. United States*, 922 F.3d 1328, 1333 (Fed. Cir. 2019) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)). The essence of an illegal exaction is when "the government has the citizen's money in its pocket." *Nat'l Veterans Legal Servs. Program v. United States*, 968 F.3d 1340, 1348 (Fed. Cir. 2020) (internal quotation marks omitted). The classic example of an illegal exaction claim is a tax refund suit. *Id.* at 1347. Another example is a suit to recover improper or excessive fees connected with the provision of government services. *See, e.g.*, *id.* at 1348–49; *Figueroa v. United States*, 466 F.3d 1023, 1029 (Fed. Cir. 2006) (determining whether patent application fees amount to an illegal exaction).

There was no illegal exaction in this case because Columbus had only a contingent interest in the disputed funds. Put differently, FEMA does not have Columbus's money in its pocket; instead, FEMA recovered funds that it had conditionally provided to Columbus and that were still subject to revocation.

Columbus contends that it acquired a property interest in the money it received from the government once it obtained possession of those funds, and that the government's recovery of those funds constituted an exaction. That contention is contrary to our case law, however. We have required that plaintiffs have a property interest in funds cognizable under the Fifth Amendment in order to maintain an illegal exaction claim. *See, e.g.*, *Texas State Bank v. United States*, 423 F.3d 1370, 1380 (Fed. Cir. 2005).

In *American Bankers Ass'n v. United States*, 932 F.3d 1375 (Fed. Cir. 2019), we held that the plaintiffs lacked a property interest, cognizable under the Fifth Amendment,

in a higher statutory dividend rate on Federal Reserve stock. *Id.* at 1385. The plaintiffs had no property interest because they had no "vested right" to the higher dividend. *Id.* There was no vested right because Congress had "expressly reserved" its right to alter the dividend rate. *Id.*; *see also Dames & Moore v. Regan*, 453 U.S. 654, 674 n.6 (1981) (President's nullification of the petitioner's attachment against foreign banks' assets did not constitute a taking, because the President exercised preexisting authority to prevent or condition attachments, and thus "petitioner did not acquire any 'property' interest in its attachments of the sort that would support a constitutional claim for compensation").

Like the plaintiffs in *American Banking* and *Dames & Moore*, Columbus never had an unconditional interest in the disputed funds in this case, because FEMA expressly reserved the right to recover those funds for certain reasons within a specific period of time. FEMA reserved that right through language in the FEMA-Indiana agreement, which states that FEMA could recover assistance payments if the funds were distributed through "error, misrepresentation, or fraud, or if funds [were] spent inappropriately." J.A. 1026. FEMA also reserved that right through a regulation, 44 C.F.R. § 206.116(b), which requires an applicant to return funds to FEMA if FEMA "determines the assistance was provided erroneously, that the applicant spent the funds inappropriately, or that the applicant obtained the assistance through fraudulent means." In sum, there were strings attached to FEMA's funds, and in light of those strings the funds were not "exacted" from Columbus within the meaning of the illegal exaction doctrine.

By statute, those strings are cut after a prescribed period of time: FEMA is barred from seeking recovery of disaster-assistance funds for a particular recovery project "after the date that is 3 years after the date of transmission of the final expenditure report for the disaster or

emergency." 42 U.S.C. § 5205(a)(1) (2008) ("Disaster grant closeout procedures"). Thus, recipients of assistance funds may develop fully vested property interests in those funds after the closeout period has expired. But that did not occur in this case: Columbus does not allege that FEMA initiated its recovery of the disputed funds after the closeout period ended. As such, Columbus lacked a vested property interest in the disputed funds, and the government's de-obligation of those funds did not constitute an "exaction" within the meaning of the "illegal exaction" doctrine.

We therefore affirm the court's dismissal of Columbus's illegal exaction claim under Rule 12(b)(6).

## G

Finally, the government asks us to affirm the dismissal of the complaint on the alternative ground that this case should have been brought in federal district court under section 702 of the Administrative Procedure Act ("APA"), not in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491.[10] Appellee's Br. 43–51. The government

---

[10] Section 702 of the APA creates a cause of action giving a person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" the right "to review thereof." 5 U.S.C. § 702. It also waives sovereign immunity for "an action in a court of the United States seeking relief other than money damages" stating a claim that "an agency or an officer or employee [of the United States] acted or failed to act in an official capacity or under color of legal authority." *Id.* District courts are accorded jurisdiction over such a cause of action by the general federal question jurisdiction statute, 28 U.S.C. § 1331.

The Tucker Act, 28 U.S.C. § 1491(a)(1), does not create a cause of action, but grants jurisdiction to the Court of Federal Claims and waives sovereign immunity in that

contends that Columbus cannot pursue its claims in the Court of Federal Claims because those claims are equitable in nature and the Court of Federal Claims does not have broad equitable powers. In arguing that the Claims Court lacks jurisdiction over Columbus's claims in this case, the government relies on the Supreme Court's decision in *Bowen v. Massachusetts*, 487 U.S. 879 (1988).

We reject the government's argument for two reasons. First, the relief Columbus seeks in this case is quite different from the relief sought in *Bowen*. Unlike in *Bowen*, Columbus is seeking only a monetary award, not any form of equitable relief. Second, unlike in *Bowen*, the claims in this case (other than the illegal exaction claim) are predicated on breach of contract, a cause of action that is exclusively assigned to the Court of Federal Claims by the Tucker Act insofar as the claimant seeks damages in excess of $10,000, *see Awad v. United States*, 301 F.3d 1367, 1372 (Fed. Cir. 2002). Columbus nonfrivolously invoked that statutory basis for the Claims Court's jurisdiction, and the government has not pointed to any reason that choice should not be respected.

1

In *Bowen*, Massachusetts filed an action against the federal government seeking injunctive, declaratory, and monetary relief relating to the State's participation in the Medicaid program. The action was brought as an APA action in federal district court. *Bowen*, 487 U.S. at 887–88. The government argued that the action should have been

_____

court for "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

brought in the Claims Court. The Supreme Court, however, held that the case was properly before the district court.

The *Bowen* Court first rejected the government's argument that section 702 of the APA, which allows for review of agency action "seeking relief other than money damages," could not serve as a vehicle for judicial review in the case. *Bowen*, 487 U.S. at 891–901. The Court explained that Massachusetts sought equitable as well as monetary relief, and that the monetary relief sought by the State was not for "damages," i.e., compensation for an injury, but instead was a form of specific relief seeking to enforce a statutory mandate. *Id*. at 893.

Second, the Court rejected the government's argument that bringing the APA action in district court was precluded by section 704 of the APA, which provides for district court review of any "final agency action for which there is no other adequate remedy in a court." *Bowen*, 487 U.S. at 901–08. Section 704 was no bar to jurisdiction in the case before it, the Court ruled, because in the circumstances of that case "the doubtful and limited relief available in the Claims Court is not an adequate substitute for review in the District Court." *Id*. at 901. The Court explained that the interaction between the State's administration of its responsibilities under an approved Medicaid plan and the government's interpretation of its regulations "may make it appropriate for judicial review to culminate in the entry of declaratory or injunctive relief that requires the [government] to modify future practices." *Id*. at 905. Given that the Claims Court lacks the equitable powers of a district court, the Supreme Court stated that it was far from clear that the Claims Court could provide an adequate remedy for the relief sought by Massachusetts. For that reason, the Court held, section 704 did not bar Massachusetts from bringing an APA action in the district court. *Id*. at 905–06.

The government argues that in light of the discussion of section 704 of the APA in *Bowen*, the Claims Court lacks jurisdiction in this case. We disagree. Unlike the situation in *Bowen*, Columbus has not sought equitable relief in this case; it has sought only an award of money in the form of contract damages. Moreover, the dispute in this case is not part of a continuing relationship between the parties, in which the request for relief will necessarily affect the rights of the parties in their ongoing dealings with one another, as was the case in *Bowen*. Instead, it is a discrete dispute about whether FEMA breached its contractual obligations in a relationship that has otherwise ended, and for which only money is sought as a remedy.

Recent decisions of the Supreme Court and this court have clarified the distinction drawn in *Bowen* between the kinds of requests for relief that can be brought in the Court of Federal Claims and the kinds that cannot. In *Maine Community Health Options v. United States*, 140 S. Ct. 1308 (2020), the Supreme Court characterized that distinction as between statutes that "attempt to compensate a particular class of persons for past injuries or labors" and those that "subsidize future state expenditures." *Id.* at 1329. The first group permits Tucker Act suits, the Court explained, while the second group does not. *Id.*

The Court in that case distinguished *Bowen* from the case before it on several grounds. In *Bowen*, the Court explained, the State "did not seek money damages, but instead sued for prospective declaratory and injunctive relief to clarify the extent of the Government's ongoing obligations under the Medicaid program." *Maine Community*, 140 S. Ct. at 1330. Thus, the suit in *Bowen* "was not merely for past due sums, but for an injunction to correct the method of calculating payments going forward." *Id.* Moreover, the Court noted that the State had sought review under the APA in *Bowen* because of the litigants' "complex ongoing relationship," which made it important that a district court with full equitable powers adjudicate future

disputes. *Id.* In that regard, the Court noted that the APA is tailored to "[m]anaging the relationships between States and the Federal Government that occur over time and that involve constantly shifting balance sheets," while the Tucker Act is suited to "remedy[ing] particular categories of past injuries or labors for which various federal statutes provide compensation." *Id.*

In view of that distinction, Columbus's claim is clearly directed to remedying a past injury, not managing an ongoing relationship between Columbus and FEMA. Columbus's past injury is the monetary loss it suffered by funding recovery contracts in reliance on the government's commitment to provide disaster assistance. While Columbus seeks monetary relief in the form of a request for the release of funds that FEMA has recovered, nothing about that request for relief is inconsistent with a contract-based claim: Columbus's claim is that FEMA promised to provide those funds if Columbus complied with the rules governing their use, and that FEMA breached that obligation.

Similarly, in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2003), the Supreme Court characterized *Bowen* as a suit for an injunction to correct the method of calculating payments going forward, not merely for the payment of past due sums. As the Court explained, in *Bowen* "Massachusetts claimed not only that the federal government failed to reimburse it for past expenses pursuant to a statutory obligation, but that the method the federal government used to calculate reimbursements would lead to underpayments in the future." *Id.* at 212.

Our recent decisions in *Sanford Health Plan v. United States*, 969 F.3d 1370 (Fed. Cir. 2020), and *Community Health Choice, Inc. v. United States,* 970 F.3d 1364 (Fed. Cir. 2020), are to the same effect. In those cases, we followed the Supreme Court's analysis in *Maine Community* and *Great-West Life* and held that the reimbursement claims sought by the plaintiff insurers could be adjudicated

by the Court of Federal Claims.  We rejected arguments that those reimbursement claims were claims for specific relief in the form of the return of funds rather than compensation for an alleged injury.  Instead, we held that the claims were purely for monetary awards within the Tucker Act jurisdiction of the Court of Federal Claims; *Bowen*'s discussion of section 704 of the APA, we concluded, was not to the contrary.  *See Sanford*, 969 F.3d at 1382; *Community Health*, 970 F.3d at 1374 n.6.

The claim for repayment of the disaster-assistance funds in this case is indistinguishable in any material way from the claims for reimbursement in *Sanford* and *Community Health*.  As we explained in *Community Health*, quoting from *Maine Community*, the type of relief the insurers were seeking is best characterized as "specific sums, already calculated, past due, and designed to compensate for completed labors," and as such the insurers' claim was properly within the jurisdiction of the Claims Court.  970 F.3d at 1374 n.6.  That same characterization applies to the request for relief in this case.

This court's analysis in *Suburban Mortgage Associates, Inc. v. United States Department of Housing & Urban Affairs*, 480 F.3d 1116 (Fed. Cir. 2007), is instructive.  In that case, the plaintiff sued in district court, alleging breach of an insurance contract.  *Id.* at 1119.  The plaintiff sought specific performance of the contract and a declaratory judgment that the government was required to make good on certain loan guarantees incorporated in the contract.  *Id.* The government argued that despite the plaintiff's efforts to couch its claims as requests for equitable relief, the plaintiff was in essence suing for monetary relief, and the case therefore belonged in the Court of Federal Claims.  *Id.* at 1126.

We agreed with the government that, despite the manner in which it was pleaded, the action was actually one for money.  For that reason, we held, an action in the Court of

Federal Claims would provide an adequate remedy.  In light of section 704 of the APA, which bars an APA action for judicial review of agency action if there is an adequate remedy in another court, we directed that the district court action should be dismissed or transferred to the Court of Federal Claims.  *Id.* at 1126–29.

In determining whether the plaintiff's case could be brought in district court, we found it unnecessary to consider whether, in light of APA section 702, the request for relief constituted a request for "money damages" that would bar an APA action.  *Id.* at 1125–26.  It was sufficient, we held, to conclude that APA section 704 prohibited the action from being brought as an APA review in district court because the action was, in essence, a claim for money for which the Court of Federal Claims could provide an adequate remedy.  *Id.* at 1126.

The same analysis applies here, except that this case is more straightforward.  The action in this case is not just "in essence" one for money, it is explicitly one for money.  No other relief is sought, nor is there any reason to believe that any equitable remedy will be necessary to give Columbus the full relief requested in its complaint.[11]  Accordingly, Columbus's action is properly before the Court of Federal

---

[11]    In its *Bowen*-based argument, the government does not separately analyze Columbus's illegal exaction claim. With respect to that claim, it is even clearer than in the case of the contract-based claims that the cause of action for an illegal exaction is one purely for money that can be brought in the Court of Federal Claims. *See Consol. Edison Co. v. United States*, 247 F.3d 1378, 1384–85 (Fed. Cir. 2001) (holding that the Claims Court can provide an adequate remedy for a monetary claim through the illegal exaction doctrine).

Claims, and Columbus would be barred by section 704 of the APA from bringing this action in district court.

By contrast, when we have concluded that a plaintiff is seeking equitable relief, we have held that the case is not properly before the Court of Federal Claims. In *Lummi Tribe of the Lummi Reservation v. United States,* 870 F.3d 1313 (Fed. Cir. 2017), for example, we held that the Court of Federal Claims lacked jurisdiction over an action based on an asserted statutory right to a block grant under the Native American Housing Assistance and Self-Determination Act of 1996. We ruled that the statute was not money mandating and that the underlying claim was "not for presently due money damages," but was for equitable relief. *Id.* at 1319. Similarly, in *National Center for Manufacturing Sciences v. United States*, 114 F.3d 196 (Fed. Cir. 1997), we held the suit was properly brought as an APA review action and not in the Claims Court under the Tucker Act. *Id.* at 202. Applying the principles of *Bowen*, we explained that the plaintiff's complaint, although partially seeking a monetary award, made clear that the plaintiff "anticipates the need for injunctive relief, such as an order enjoining the defendants from obligating and disbursing particular funds that should be reserved" for the plaintiff and extending the time of the obligation to preserve the status quo. *Id.* at 201.[12]

---

[12]    Similarly, following an adverse decision by the Interior Board of Land Appeals ("IBLA"), the Taylor Energy Company sought to file an action in the Claims Court for breach of contract and to reverse the IBLA's decision. *See Taylor Energy Co. v. Dep't of the Interior*, No. 20-1909 (Fed. Cir. Mar. 9, 2021). We noted that review of IBLA decisions lies in district courts and that IBLA decisions are binding on the Claims Court in related lawsuits. Because the Claims Court "must accept the IBLA's decisions," we held that the Claims Court could not provide an adequate

2

A second reason why Columbus's contract-based claims are properly before the Court of Federal Claims is that Columbus seeks monetary relief on a breach of contract theory, a cause of action for which the Tucker Act expressly vests jurisdiction in the Claims Court, *see* 28 U.S.C. § 1491(a)(1).  The government argues that because Columbus has no contract-based rights in this case, it may proceed only by challenging FEMA's de-obligation decision as final agency action reviewable under section 702 of the APA.  For the reasons set forth above, we have rejected the premise of that argument and held that Columbus can pursue contract rights on a third-party beneficiary theory.

In order for the Claims Court to have jurisdiction over a breach of contract claim, the action must be solely for

---

remedy for Taylor's requested reversal of the IBLA decision and that jurisdiction therefore lay in the district court, not the Claims Court.  *Id.*, slip op. at 11, 14.

In this case, Columbus seeks only a discrete contract-based monetary remedy, and the government does not argue that FEMA's rejection of Columbus's internal appeal barred Columbus's action in the Claims Court as a matter of collateral estoppel.  Collateral estoppel applies to administrative determinations when the administrative agency "is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (1975) (citations omitted).  While the IBLA acts in a judicial capacity and satisfies the standards for adjudicative determinations, *see Taylor Energy Co. v. Dep't of the Interior*, 975 F.3d 1303, 1311 n.6 (Fed. Cir. 2020) (citing *Underwood Livestock, Inc. v. United States*, 89 Fed. Cl. 287, 290 (2009)), the government has not suggested that FEMA's internal appeals process does so.

money and not for "injunctive relief or specific performance, except in narrowly defined, statutorily provided circumstances." *Kanemoto v. Reno*, 41 F.3d 641, 645 (Fed. Cir. 1994). We look to the substance of the complaint to determine whether the action is for monetary or equitable relief. *Gonzalez & Gonzalez Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*, 490 F.3d 940, 944 (Fed. Cir. 2007); *Suburban Mortg. Assocs.*, 480 F.3d at 1124; *Nat'l Ctr. for Mfg. Scis. v. United States*, 114 F.3d 196, 198–99 (Fed. Cir. 1997).

For example, in *Brazos Electric Power Cooperative v. United States,* 144 F.3d 784 (Fed. Cir. 1998), the plaintiff sought to recover certain funds that the government had withheld as a penalty under a contract with the plaintiff. The plaintiff pleaded its claim as one for specific relief, but we held that it was actually one for damages. *Id.* at 786–87. In substance, Brazos was seeking a refund of money that was wrongfully paid to the federal government, which we held was a request for contract damages. "Whether this refund is paid directly to Brazos or whether it is credited towards other money Brazos owes to the federal government is irrelevant to our analysis. Either way, Brazos would be receiving monetary damages from the public fisc of the United States which is the touchstone of Tucker Act jurisdiction." *Id.* at 787.

We have reached the same conclusion in other, similar cases. *See, e.g.*, *Securiforce Int'l Am., LLC v. United States*, 879 F.3d 1354, 1360 (Fed. Cir. 2018) ("If the only significant consequence of the declaratory relief sought would be that [the plaintiff] would obtain monetary damages from the federal government, the claim is in essence a monetary one" that falls within the contract-based jurisdiction of the Court of Federal Claims. (internal quotation marks omitted)); *Brighton Vill. Assocs. v. United States*, 52 F.3d 1056, 1059 n.3 (Fed. Cir. 1995) (noting that *Bowen* reinforces the jurisdiction of the Court of Federal Claims in resolving contract disputes).

In this case, Columbus has sought only a money judgment, and its request for relief does not in any way invoke equitable remedies. Even if it would have been possible for Columbus to seek some form of equitable relief in this case, it chose not to do so, but instead elected to pursue a monetary claim in the Court of Federal Claims on a breach of contract theory. It was therefore proper for the Claims Court to exercise jurisdiction over Columbus's breach of contract claims.[13] For that reason as well, we reject the government's alternative ground for dismissing Columbus's contract-based claims for lack of jurisdiction.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**

Costs

No costs.

---

[13]   The government relies in part on the Seventh Circuit's decision in *Columbus Regional Hospital v. FEMA*, 708 F.3d 893 (7th Cir. 2013), which involved an earlier dispute between the parties dealing with the same disaster-assistance grant. Columbus brought that action in district court as a challenge to final agency action under section 702 of the APA, seeking an increase of $20 million in grant assistance. Based on its interpretation of *Bowen*, the Seventh Circuit held that the action was for specific performance rather than damages and was therefore properly before the district court. *Id.* at 896–97. Significantly, however, that case was not brought on a breach of contract theory. In fact, the Seventh Circuit specifically acknowledged that "compensation for breach of contract is outside the scope of § 702." *Id.* at 896. The Seventh Circuit's decision therefore does not support the government's contention that an action such as this one, seeking damages for breach of contract, must be brought in district court instead of in the Court of Federal Claims.